Argued June 24; affirmed July 2, 1946

# NANNY *v.* OREGON LIQUOR CONTROL COMMISSION

(171 P. (2d) 360)

Earl C. Latourette, Judge.

*Wilber Henderson,* of Portland, for appellant.

*Glenn R. Jack,* of Oregon City (with Butler & Jack on brief), for respondent.

Before Belt, Chief Justice, and Kelly, Bailey, Lusk, Brand and Hay, Justices.

BELT, C. J.

This is a replevin action to recover possession of 332 cases of whiskey valued at $11,010.13 alleged to be wrongfully detained by the Oregon Liquor Control

Commission. The cause was submitted to the court, without the intervention of a jury. From a judgment in favor of the plaintiff, the defendant Commission appeals.

There is no dispute as to the facts. It is conclusively established that plaintiff owned the whiskey in California; that it was stolen from him; and that without his knowledge or consent it was transported into the state of Oregon. The Commission introduced no evidence. The sole question is what legal deduction should be made from the evidence.

It appears from the uncontradicted evidence that the plaintiff J. V. Nanny, who is engaged in the wholesale liquor business in Los Angeles, under the trade-name of Merchants Wholesale Company, purchased 332 cases of whiskey from the American Distillery Company for the sum of $11,010.13, as shown by his check introduced in evidence. The American Distillery Company turned the whiskey over to the Columbia Freight Lines at Sausalito, California, as evidenced by a bill of lading, dated September 7, 1945, directing delivery of the whiskey to the plaintiff at Los Angeles. While the whiskey was in transit, it was stolen and transported by truck into the state of Oregon. As soon as plaintiff learned of the theft, it was reported to the police, and the parties in possession thereof—Fred Vargas and R. J. Harrison—were, on September 17, 1945, arrested in Clackamas county, Oregon, charged with the unlawful possession and transportation of the whiskey. Two days later, Vargas and Harrison entered a plea of guilty to such charge. The state thereupon obtained an order from the court directing that the whiskey be confiscated and delivered to the Oregon Liquor Control Commission. When the plaintiff learned that the whiskey had been confiscated by

the Commission, he immediately asserted ownership of the same and demanded possession thereof. Upon refusal of the Commission to surrender possession of the liquor, plaintiff commenced this action.

The defendant Commission contends that the whiskey is contraband in that it was in the possession of persons who did not procure it from the Commission, but was brought into the state in violation of the law. The Commission further contends that if it should deliver this whiskey to the plaintiff it would "ipso facto make him a law violator," and therefore this possessory action cannot be maintained.

Appellant relies upon § 24-137 O. C. L. A. which makes it unlawful:

> "For any person to purchase, *possess*, transport or import, except for sacramental purposes, alcoholic liquor except such as shall have been procured from or through the commission and except as in this act otherwise provided;" (Italics ours)

The only exception above referred to that has any application herein is that part of § 24-114 O. C. L. A. which prohibits an individual entering the state from having in his possession in excess of one quart of alcoholic liquor.

Plaintiff stresses § 24-113 O. C. L. A. which provides:

> "The exclusive right to purchase, *sell*, have in *possession for sale*, import or transport * * * * * * spiritous liquor, or any alcoholic liquor containing over 17 per cent of alcohol by weight, hereby is vested in the commission." (Italics ours)

The plaintiff has never had possession of the whiskey in Oregon. It was brought here against his will. Certainly those who stole this liquor from the

plaintiff cannot be considered as his agents. It is conceded that the Commission had the right, under the statute, to take possession of the whiskey when it was in the unlawful possession of Vargas and Harrison. The whiskey could, as to them, undoubtedly be considered as being contraband, but does it follow that the property rights of an innocent owner can thus be forfeited? Plaintiff was not a party to the confiscation proceedings nor did he have any notice thereof. He had no opportunity to be heard. We think such proceedings did not divest him of the title to the property in question.

■ Would the plaintiff become a "law violator" upon delivery of the whiskey to him by the Commission? The answer depends upon whether we look to the spirit of the law rather than to the letter. Appellant argues for a strict construction of § 24-137 O. C. L. A. It insists that the words of the statute should be accepted in their literal sense. We are unwilling to put such a narrow and restricted construction upon the Act. It is not the policy of the law to punish the innocent. There are times when courts are required to look beyond the strict or literal sense of words in a statute to avoid an absurd or unjust result. All laws should receive a sensible construction.

■ As stated in 59 C. J. 967, § 573: "The rule of construction according to the spirit of the law is especially applicable where adherence to the letter would result in absurdity or injustice, * * *."

In 50 Am. Jur. 232, § 240, the rule is thus expressed:

"The courts are not always confined to the mere letter of the law, or to the literal or strict meaning of statutory terminology. It often happens that the true intention of the law-making body,

though obvious, is not expressed by the language employed in a statute when that language is given its literal meaning. In such case, the carrying out of the legislative intention, which is the prime and sole object of all rules of construction, can only be accomplished by departure from the literal interpretation of the language employed.''

The ancient Bolognian law provided ''that whoever drew blood in the streets should be punished with the utmost severity'', but Puffendorf—the legal philosopher—in commenting on this law well said ''it did not extend to the surgeon who opened the vein of a person that fell down in the street in a fit.''

The same common sense rule of construction was applied by the supreme court of Kansas in *State v. Goyette,* 140 Kan. 732, 37 P. (2d) 1001, in construing a statute reading as follows:

''All automobiles, vehicles and other property used in the transportation or carrying of intoxicating liquors into this state or in carrying and transporting intoxicating liquors from one place to another within this state are hereby declared to be common nuisances.''

The automobile sought to be confiscated because unlawfully transporting intoxicating liquor was stolen from the owner. The court, in holding the vehicle not subject to confiscation, said:

''If this car may be confiscated, then the car of any law-abiding citizen which is stolen and used in the transportation of liquor may be confiscated. This construction of the statute would be such a harsh one that we have concluded that the Legislature had no such intention.''

This court, in *State v. Cox,* 91 Or. 518, 179 P. 575, recognized that the spirit and purpose of the law should

prevail over a literal meaning of words in order to avoid construing a statute which would result in absurdity and injustice. In the Cox case, the statute upon which the indictment was based provided that it was unlawful to possess intoxicating liquor within the state. A hotel porter received as baggage of an incoming guest a suitcase containing intoxicating liquor. Defendant contended that he had no knowledge that the liquor was in the suitcase. It was held that the state was required to show that the defendant knew or had reasonable ground to believe that the suitcase contained intoxicating liquor when he took it into his possession. In *State v. Aschenbrenner*, 171 Or. 664, 138 P. (2d) 911, 147 A. L. R. 1052, and *State v. Opie*, ante p. 187, 170 P. (2d) 736—decided by this court on June 25, 1946—the same rule of construction was applied.

■ The primary purpose of the "Oregon Liquor Control Act", §§ 24-101 to 24-149 O. C. L. A., is to regulate and control the sale and use of intoxicating liquor. It was never intended by the legislature that § 24-137 O. C. L. A. should apply to this factual situation.

■ Cases decided prior to the repeal of the National Prohibition Act are not in point, as intoxicating liquor was then beyond the pale of the law. *Windham v. Harmon*, 50 Ga. App. 322, 178 S. E. 160, was an action to recover possession of beer. Under the statute of that state, it was illegal to possess beer. Under the specific provisions of the statute, there were "no property rights of any kind" in beer. That case is authority for the proposition that actions cannot be maintained for the recovery of property which it is illegal to possess, but we fail to see any application to the facts

in the instant case. The same may be said of *Stevens v. Hallmark*, (Tex.) 109 S. W. (2d) 1106, and *State v. Ditmar*, 132 Wash. 501, 232 P. 321. Indeed, we have found no case in point cited by appellant, assuming that our construction of the statute in question is correct.

. We do not believe that the plaintiff would become a violator of the law immediately upon delivery of this whiskey to him by the Commission. An owner's acceptance of delivery of property stolen from him would not constitute unlawful possession within the meaning of the statute. Plaintiff is entitled to the benefit of the presumption of innocence. It is quite reasonable to assume that plaintiff will lose no time in removing the whiskey from the boundaries of this state. However, if he, or any of his agents, should undertake to deal with the liquor within the state, it would unquestionably be subject to seizure and confiscation.

 The Commission acted in good faith and was right in taking possession of the whiskey, but, when it was conclusively established that the plaintiff was the owner thereof and that it had been brought into this state without his knowledge or consent, it was the legal duty of the Commission to return the property to the plaintiff after demand for possession thereof had been made. When it failed so to do, the plaintiff had a cause of action in replevin against the Commission by reason of its wrongful detention of his property, even though the original taking by the Commission was not unlawful. *Krebs Hop Co. v. Taylor*, 52 Or. 627, 97 P. 44, 98 P. 494, 46 Am. Jur. 33, § 55.

The judgment is affirmed.