Argued November 27, 1972, reversed and remanded January 12,
petition for rehearing denied February 15, petition
for review denied March 30, 1973

# STATE OF OREGON, *Respondent, v.* ALCUIN
# ALVIN ANNEN (No. 74546), *Appellant.*
## 504 P2d 1400

*Bruce W. Williams,* Salem, argued the cause and filed the briefs for appellant.

*James A. Hearn,* Deputy District Attorney, Salem, argued the cause for respondent. With him on the brief was Gary D. Gortmaker, District Attorney, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

SCHWAB, C. J.

This appeal presents the question of whether it was error to admit into evidence in a negligent homicide trial the results of a blood alcohol test showing an alcohol content of .24 per cent[1] when the blood sample which was tested was taken from the defendant after the defendant had expressly refused the state permission to take a blood sample from him. Under the terms of the Implied Consent Law, ORS 483.634 et seq, as interpreted by *State v. Fogle,* 254 Or 268, 459 P2d 873 (1969), the results of the test should not have been received in evidence.

---

[1] More than .10 per cent of alcohol in the blood creates a disputable presumption that a driver is under the influence. ORS 483.642 (1)(c).

The night of September 14, 1971, defendant was driving a pickup truck north on US 99E. Near Gervais defendant's truck and an automobile collided head-on. The driver of the automobile later died from injuries received in the accident.

One eyewitness testified that the collision occurred in the southbound lane, i.e., that defendant was over the center line. Pictures of the damage to the vehicles and of tire marks, etc., on the highway were consistent with the state's theory that defendant had been driving in the wrong, i.e., southbound, lane, and was turning back toward his lane at the time of the collision. Six witnesses testified that they were in defendant's presence in the hours following the accident; each testified that he had formed the opinion defendant was under the influence of intoxicating liquor.

Defendant was taken by ambulance to a hospital. A state policeman and deputy district attorney investigating the accident came to the hospital and asked defendant's permission to take a blood sample for purposes of a chemical sobriety test. Defendant refused. Neither party contends that the defendant was so intoxicated that he could not understand the request. In spite of his refusal and at least verbal resistance, a blood sample was withdrawn from defendant's arm.[2]

■ No constitutional issue is presented. Nothing in the United States or Oregon constitutions would prohibit a policeman who has probable cause to believe a person was driving under the influence of alcohol from requiring that person to submit to a chemical test of his blood, breath, saliva, urine, etc. *Schmerber v. California,* 384 US 757, 86 S Ct 1826, 16 L Ed 2d 908

---

[2] At the time of these events the other driver was still alive.

(1966); *Heer v. Dept. of Motor Vehicles,* 252 Or 455, 450 P2d 533 (1969); *State v. Cram,* 176 Or 577, 160 P2d 283, 164 ALR 952 (1945). As in other situations where the police have probable cause to make a search, the driver's consent or lack thereof would be irrelevant. *Schmerber v. California,* supra.

However, in adopting the Implied Consent Law, the legislative assembly did not fix the statutory limits at the constitutionally permissible limits. Instead, it is apparent that in some instances drivers have a statutory right under the Implied Consent Law to refuse to submit to any and all chemical sobriety tests.

The material provisions of the Implied Consent Law provide:

> "Any person who operates a motor vehicle upon the highways of this state shall be deemed to have given consent, subject to ORS 483.634 to 483.646, to a chemical test of his breath for the purpose of determining the alcoholic content of his blood if arrested for driving a motor vehicle while under the influence of intoxicating liquor in violation of subsection (2) of ORS 483.992 or of a municipal ordinance * * *." ORS 483.634 (1).

> "If a person under arrest for driving a motor vehicle while under the influence of intoxicating liquor in violation of subsection (2) of ORS 483.992 or of a municipal ordinance, *refuses the request of a police officer to submit to a chemical test of his breath* as provided in subsection (1) of this section * * * *no test shall be given,* but the police officer shall prepare a sworn report of the refusal and cause it to be delivered to the division * * *." ORS 483.634 (2). (Emphasis supplied.)

> "If a person under arrest *refuses to submit* to a chemical test of his breath under the provisions of subsection (2) of this section or *refuses to con-*

*sent* to chemical tests as provided by ORS 483.636, *evidence of his refusal shall not be admissible in any civil or criminal action, suit or proceeding arising out of acts alleged to have been committed while the person was driving a motor vehicle on the highways while under the influence of intoxicating liquor.*" ORS 483.634 (3). (Emphasis supplied.)

"Nothing in ORS 483.634 is intended to, in lieu of a request for an administration of a breath test, preclude the administration of a chemical test of the blood, urine or saliva of any person *if, when requested by a police officer, the person expressly consents to such a test.*" ORS 483.636. (Emphasis supplied.)

■ These sections explicitly state that arrested drivers can "refuse to submit," ORS 483.634 (2) and 483.634 (3), to chemical breath tests, and arrested drivers must "expressly consent," ORS 483.636, to other chemical tests. "* * * [T]he statute recognizes that a person may refuse to submit to the test * * *," *State v. Fogle,* 254 Or 268, 270, 459 P2d 873 (1969). *See also, Thorp v. Dept. of Motor Vehicles,* 4 Or App 552, 480 P2d 716 (1971); *State v. Greenough,* 7 Or App 520, 491 P2d 630 (1971), Sup Ct *review denied* (1972).

The state argues that the statutory right of refusal is limited to

"* * * a person under arrest for driving a motor vehicle while under the influence of intoxicating liquor in violation of subsection (2) of ORS 483.992 or of a municipal ordinance * * *." ORS 483.634 (2),

and points out that here defendant was arrested, just before the blood sample was taken, for reckless driving.

The legislature may limit the statutory right to refuse to take a *breath* test to situations when a driver is arrested for driving under the influence of intoxicating liquor. Under ORS 483.636, however, a *blood* test cannot be compelled over the driver's refusal; this section is not qualified in any way by making it dependent upon the reason for the driver's arrest.

Moreover, the statutory language upon which the state relies, ORS 483.634 (2), must be read in conjunction with ORS 483.634 (3) which provides that evidence of a driver's refusal to submit to any kind of chemical test

> "* * * shall not be admissible in any civil or criminal action, suit or proceeding arising out of acts alleged to have been committed while the person was driving a motor vehicle on the highways while under the influence of intoxicating liquor."

If the statutory right to refuse to take a blood test were limited to persons arrested for driving under the influence, the quoted part of ORS 483.634 (3) would be meaningless. We do not believe the legislature intended blood test results obtained without a driver's consent to be admissible any time the driver was arrested for something other than driving while under the influence of liquor, while at the same time providing the act of refusing to consent was inadmissible "in any * * * criminal action."

■ After police interviewed witnesses at the accident scene they had probable cause to arrest defendant for driving under the influence, or reckless driving or possibly any number of other traffic violations. It could produce absurd results if the standards of the Implied Consent Law did or did not apply depending on the words the officer selected in making an arrest

or issuing a citation. Statutes should be interpreted to avoid absurd results. *See, Nanny v. Oregon Liquor Control Com.,* 179 Or 274, 171 P2d 360 (1946).

Our conclusion is compelled by *State v. Fogle,* supra. *Fogle,* like this case, involved a negligent homicide charge. The Supreme Court held evidence of chemical breath test results inadmissible on the grounds of noncompliance with the Implied Consent Law. While the *Fogle* opinion does not mention the charge on which Fogle was originally arrested, the failure to do so indicates the Supreme Court believed that to be irrelevant.[9]

■ The Implied Consent Law permits an arrested driver to refuse to submit to chemical sobriety tests. This statutory right was available to defendant in this case. The blood sample should not have been taken without defendant's consent. Its use at trial was error.

The defendant makes two other assignments of error. They do not warrant discussion beyond noting that *State v. Montieth,* 247 Or 43, 417 P2d 1012 (1966), *dismissed* 386 US 780, 87 S Ct 1496, 18 L Ed 2d 526 (1967), disposes of both contrary to his contentions.

Reversed and remanded.

THORNTON, J., dissenting.

I am unable to agree with the reasoning and result reached in the prevailing opinion and therefore respectfully dissent for the following reasons:

The Oregon version of the model Implied Con-

---

[9] The transcript of the *Fogle* case shows that although the victim was dead at the time, and the police had already considered the possibility of a negligent homicide charge, Fogle was placed under arrest for drunken driving prior to being asked to take a breathalyzer test.

sent Law provides that every motorist, by driving on the highways of this state, impliedly consents to take a breath test "* * * *if arrested for driving a motor vehicle while under the influence of intoxicating liquor in violation of subsection (2) of ORS 483.992 or of a municipal ordinance * * *." ORS 483.634 (1). (Emphasis supplied.)

In the case at bar defendant was arrested for reckless driving, not for driving while under the influence of intoxicating liquor. Therefore the provisions of the Implied Consent Law do not apply.

For the same reason the right to refuse the test given by ORS 483.634 (2) applies only to "* * * a person under arrest for driving a motor vehicle while under the influence of intoxicating liquor in violation of subsection (2) of ORS 483.992 or of a municipal ordinance * * *." ORS 483.634 (2). (Emphasis supplied.)

Of course, under the facts in the *Annen* case, the state, through its Motor Vehicle Division, would not be able to invoke the sanctions of the Implied Consent Law to suspend defendant's operator's license for 90 days for refusal to consent to the chemical test. This is so because defendant was not arrested for driving while under the influence of intoxicating liquor and therefore the preconditions specified in the statute were not followed. *State v. Laplaca,* 126 Vt 171, 224 A2d 911 (1966).

A motorist under arrest for, and reasonably suspected of, driving a motor vehicle while under the influence of intoxicating liquor, has no constitutional right to refuse to submit to a blood test. *Schmerber v. California,* 384 US 757, 86 S Ct 1826, 16 L Ed 2d 908 (1966).

Squarely in point is *People v. Sanchez,* 173 Colo 188, 476 P2d 980 (1970). In *Sanchez* the trial court had granted defendant's pretrial motion to suppress a breathalyzer test taken under the Colorado version of the Implied Consent Law on the ground that defendant, who was charged with the felony of causing injury while driving under the influence of intoxicating liquor, was not adequately advised of the charge against him. The Colorado Implied Consent Law is substantially identical with Oregon's on all points involved here, including the right to refuse a chemical test. The court said:

> "We conclude, that consent of the defendant was not constitutionally required under the Fourth Amendment to the United States Constitution in order to administer the breathalyzer test under the circumstances of this case.

> "We observe here that the implied consent law applies only to the misdemeanor offense of driving under the influence of intoxicating liquor as defined in C.R.S. 1963, 13-5-30. This is so by reason of the qualifying language contained in the statute, which provides:

> > " 'Any person who drives any motor vehicle upon a public highway in this state shall be deemed to have given his consent to a chemical test of his blood, breath, or urine for the purpose of determining the alcoholic content of his blood, *if charged with driving a motor vehicle while under the influence of intoxicating liquor.* * * *' (Emphasis added.) 1967 Perm. Supp., C.R.S. 1963, 13-5-30 (3) (a).

The qualifying language is contrasted with that contained in the California implied consent statute, which provides:

> " 'Any person who drives a motor vehicle upon a highway shall be deemed to have given his consent to a chemical test of his blood, breath or

urine for the purpose of determining the alcoholic content of his blood *if lawfully arrested for any offense allegedly committed under the influence of intoxicating liquor.* * * *' (Emphasis added.) Vehicle Code section 13353 (enacted Stats. 1966, 1st Ex. Sess., c. 138, p. 634, § 1).

*Under the Colorado implied consent statute, the legislature has granted to the driver the right to refuse to take the chemical test, which refusal must be honored by the arresting officer.* Such right of refusal, of course, is subject to the sanction of suspension of one's operator's license.

"Inasmuch as the statute does not extend to felonies, such as defendant is here charged with, he could not claim any statutory right to refuse to take the breathalyzer test that was here administered. Since consent is neither statutorily nor constitutionally required, it is immaterial whether the defendant was inadequately advised or whether his consent was uninformed.

"The ruling is reversed." 173 Colo at 192-93, 476 P2d at 982. (Third Emphasis ours.)

*State v. Fogle,* 254 Or 268, 459 P2d 873 (1969), which is chiefly relied upon in the prevailing opinion, is not applicable here for the following reasons:

(1) In *Fogle* defendant was arrested for driving while under the influence of intoxicating liquor. He was given a breath test *with his consent pursuant to the provisions of the Implied Consent Law.* Here defendant was arrested not for driving while under the influence of intoxicating liquor, but for reckless driving. His blood was not withdrawn under the provisions of the Implied Consent Law.

(2) *Fogle* was decided on the narrow issue of whether the breathalyzer equipment used had been tested in the manner prescribed by the Implied Consent

Law. The issue involved in the case at bar was not raised in *Fogle* (in fact it could not have been raised) because Fogle was arrested for driving while under the influence of intoxicating liquor and consented to the breath test.

Summarizing the reasons for my dissent, the Implied Consent Law is a special statute dealing only with persons arrested for driving while under the influence of intoxicating liquor. The sole purpose of this statute is to provide a procedure for suspending the operator's license of those motorists who are properly arrested for driving while under the influence of intoxicating liquor and who refuse to take a breath test. Its application should be limited to its express terms. The basic premise of the Implied Consent Law is that the consequences which follow when a motorist refuses to take the breath test are separate and distinct from all other types of legal proceedings. As the court pointed out in *Severson v. Sueppel,* 260 Iowa 1169, 152 NW2d 281 (1967), acquittal of the criminal charge of operating a motor vehicle while intoxicated did not preclude revocation of a driver's license for refusal to submit to chemical sobriety test, since the revocation proceeding was a civil matter independent of the criminal prosecution and the outcome of one action was of no consequence to the other.

It is my conclusion that the requirement of consent is applicable only to the procedures provided in the Implied Consent Law itself. Thus, the Implied Consent Law does not, for example, prevent law enforcement authorities from withdrawing blood from an unconscious person for use in a negligent homicide prosecution, as this court held, quite properly, in *State v. Greenough,* 7 Or App 520, 491 P2d 630 (1971), Sup Ct *review denied* (1972).

As the Colorado Supreme Court held in *Sanchez*, the right to refuse a chemical test under the Implied Consent Law applies only if a person is arrested for driving while under the influence of intoxicating liquor. Here defendant had no statutory right to refuse the test inasmuch as he was arrested for reckless driving. Likewise the statutory prohibition against introducing evidence of a driver's refusal to submit to any kind of chemical test has no application because defendant was arrested for reckless driving.[1]

For the reasons I have set forth, it seems to me that the result reached in the prevailing opinion represents a misapplication of the Implied Consent Law, is inconsistent with the rationale of our holding in *State v. Greenough*, supra, and is not required by *State v. Fogle*, supra. I would affirm the decision of the trial judge.

---

[1] The model law and the laws of 13 states provide that a motorist's refusal to allow a chemical test can be used as evidence. Nine states, including Oregon and Colorado, have laws expressly prohibiting an evidentiary use of a motorist's refusal to submit to a chemical test in all or certain proceedings against him. Our law provides that this refusal cannot be shown in any other type of proceeding. The Colorado version provides that the refusal cannot be shown in a criminal prosecution for driving while under the influence of intoxicating liquor. Traffic Laws Ann 642, 643, § 11-902.1 (1972).