Argued March 30, affirmed April 16, 1973

STATE OF OREGON, *Respondent, v.* JOHN
LOUIS OSBURN (No. 28969), *Appellant.*

508 P2d 837

*Ronald L. Miller,* Astoria, argued the cause and filed the brief for appellant.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

SCHWAB, C. J.

Defendant was convicted of driving with more than .15 percent alcohol in his blood. ORS 483.999 (1).

On appeal he contends his breathalyzer test score should not have been admitted into evidence, because he was never informed of certain rights. This contention raises both constitutional and statutory issues.

As we understand the facts from the partial transcript filed with this appeal, defendant was arrested for driving under the influence of intoxicating liquor.[1] He was taken to the police station where the arresting officer asked if he would take a breathalyzer test. Defendant agreed, and took the test. It revealed .18 percent alcohol in defendant's blood. The arresting officer said nothing to defendant about any right to obtain an additional independent chemical blood alcohol test, or to refuse to take the test, or the consequences of a refusal before defendant submitted thereto.

When considering whether the results of blood alcohol tests are admissible in any judicial proceeding it is important to distinguish between constitutional issues and statutory issues.

I

For the purposes of the Oregon and United States Constitutions, a blood alcohol test amounts to a search. *Schmerber v. California,* 384 US 757, 86 S Ct 1826, 16 L Ed 2d 908 (1966) ; *Heer v. Dept. of Motor Vehicles,* 252 Or 455, 450 P2d 533 (1969). Such a search is constitutionally permissible if an arresting officer has probable cause to believe a blood alcohol test will produce evidence of some crime, such as driving under the influence of liquor. Furthermore, the search, i.e., blood alcohol test, can be made without first obtaining a warrant if exigent circumstances are

[1] The partial transcript does not include any testimony about the circumstances surrounding defendant's arrest.

present. The probable cause question is a factual one in each case—resolved on the basis of the facts that prompted the officer to initially stop and arrest the driver involved. Once probable cause is established, exigent circumstances justifying a warrantless search are present as a matter of law because of the medical fact that alcohol in the blood dissipates with the passage of time. *Schmerber v. California,* supra.

In this case, it is apparently conceded that there was probable cause to arrest defendant for driving under the influence. *See,* n 1, supra. Thus, the search was constitutionally reasonable based on the presence of probable cause plus the exigent circumstance that makes time of the essence. *Schmerber v. California,* supra.

██ Defendant points out that he was in custody when asked to consent to the breathalyzer test, but was never given the warnings that are required by *State v. Williams,* 248 Or 85, 432 P2d 679 (1967), in order to make his consent to search effective. The simple answer is that for the reasons stated above the arresting officer did not need defendant's consent to make the search in question. It is only when the police do not have probable cause to search or when no exigent circumstances justifying a warrantless search are present that consent becomes material. Once probable cause plus exigent circumstances are established— as they have been in this case—consent to search or lack thereof is irrelevant for constitutional purposes. Accordingly, the breathalyzer test results were admissible over constitutional objection.[2]

---

[2] Defendant also claims there is a Fifth Amendment self-incrimination issue presented, relying on the dissenting opinions in Schmerber v. California, 384 US 757, 86 S Ct 1826, 16 L Ed 2d 908 (1966). This contention was rejected by the Oregon Su-

## II

Turning to the statutory issue, defendant argues ORS 483.634 (2)(d) and ORS 483.634 (2)(e) require that arrested drivers be informed of certain rights and consequences before being offered the choice of submitting to a breathalyzer test.[3] Since defendant was not informed of these rights and consequences before taking the breath test, he reasons the test results are inadmissible because of what he perceives as this statutory violation.

■ We disagree with defendant's interpretation of the controlling statutes. They do not explicitly require police officers to inform an arrested driver of anything. Instead, ORS 483.634 (2) and ORS 482.550 (2), read together, provide only that the Motor Vehicles Division cannot suspend a person's driver's license for refusing to take a breath test unless he has been advised of the required rights and consequences. Accordingly, failure of the arresting officer to do so only bars administrative license suspension for refusing to take the test, but does not, if the driver takes the test, make the results thereof inadmissible in a criminal trial.[4]

Defendant's additional assignment of error is controlled by *State v. Rush,* 248 Or 568, 436 P2d 266 (1968).

Affirmed.

preme Court in Heer v. Dept. of Motor Vehicles, 252 Or 455, 450 P2d 533 (1969).

[3] The rights and consequences in question are set out in ORS 482.540 to 482.560 and ORS 483.638.

[4] Following State v. Fogle, 254 Or 268, 459 P2d 873 (1969), we recently held in State v. Annen, 12 Or App 203, 504 P2d 1400, Sup Ct *review denied* (1973), that evidence obtained in violation of the controlling statutes is inadmissible in a criminal trial. Those cases are not applicable here since we find no statutory violation.