# STATE OF OREGON, *Respondent,*
## *v.*
# DAVID ANDREW JONES, *Petitioner.*
### (TC 75-4983, CA 6301, SC 25130)
566 P2d 867

Gary L. Hooper, Deputy Public Defender, Salem, argued the cause for petitioner. With him on the briefs were Gary D. Babcock, Public Defender, and Patrick B. Gilmore, Law Clerk, Salem.

Donald L. Paillette, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

TONGUE, J.

## TONGUE, J.

Defendant was convicted of the crime of rape. In appealing to the Court of Appeals he contended, among other things, that the trial court erred in denying defendant's motion to suppress a sample of defendant's blood and that the conduct of the prosecuting attorney was such as to deny his right to receive a fair trial. The Court of Appeals affirmed the conviction. 28 Or App 131, 558 P2d 1271 (1977). We granted defendant's petition for review because of our concern whether that court correctly decided those two questions.[1]

According to testimony offered by the state, defendant and a companion stopped by the apartment of the complaining witness in Eugene on the afternoon of October 2, 1975, to inquire whether a friend might be there. They were permitted to enter the apartment. Finally, all other persons departed, leaving defendant alone with the complaining witness. She testified that he then raped her and did so after she told him that she was then menstruating. He denied having any intercourse with her.

After the alleged rape was reported a bloody Tampax was found in the room. Laboratory tests established that the blood on the Tampax was major type "A". Blood of the same type was found on the fly of defendant's undershorts after his arrest later that same day.

On November 6, 1975, the deputy district attorney assigned to the case, considering it important to determine whether defendant's blood was of that same type or some other type, obtained an ex parte order from Circuit Judge Beckett authorizing the taking of a

---

[1] The Court of Appeals also considered and rejected defendant's further contention that the provisions of ORS 161.725 through 161.735 relating to enhanced penalties for "dangerous offenders" are unconstitutional in granting unlimited discretion to the trial court. We did not grant review upon that question because we think that it was correctly decided by the Court of Appeals.

sample of defendant's blood. Before that order was executed, however, defendant's attorney requested oral argument. Such a hearing was then set for November 20 before Judge Beckett. The district attorney's office was notified of that hearing date. At that time the trial was set for November 28.

On November 18, however, the deputy district attorney appeared ex parte before District Judge Hodges and obtained a search warrant authorizing the taking of a sample of defendant's blood. At that time Judge Hodges was not informed that a hearing on a motion for an order for the same purpose was then pending before Judge Beckett.

The next day, November 19, four police officers and a registered nurse entered the Lane County Jail and forcibly took a sample of defendant's blood, over his protest and attempted resistance. The blood taken from defendant was type "O".

1. *The motion to suppress the sample of defendant's blood.*

Defendant then filed a motion to suppress that evidence, supported, among other things, by an affidavit by Judge Hodges that he would not have authorized the search warrant had he been told of the hearing then pending before Judge Beckett. At the hearing on the motion to suppress the deputy district attorney stated that the reason "for pursuing the Search Warrant was simply one of time"; that he then felt that "there was a pressing need * * * to pursue the obtaining of the blood sample promptly," so as not to delay the trial of the case (then set for November 28), and that he considered the search warrant to be an "alternative remedy." No other explanation was offered at that time for not informing Judge Hodges of the hearing then pending before Judge Beckett, from what appears in the record as transmitted to this court.

[ 58 ]

That motion to suppress, heard before Judge Allen, was denied with the statement that:

"* * * The troublesome thing in this case of course is the prior Order which was in question at that time and the obtaining of a subsequent Search Warrant. In my opinion this doesn't raise any legal issue, it raises an issue which may be presented to another form [sic] but doesn't raise a legal issue that the defendant has any standing."

■ We agree with the trial court in its holding to the effect that any misconduct by the deputy district attorney in the securing of the warrant for the taking of a sample of defendant's blood did not violate any constitutional rights of the defendant. As held in *State v. Stover,* 271 Or 132, 147 n.10:

"In cases other than driving under the influence of intoxicating liquor constitutional search and seizure standards will govern the admissibility of the results of chemical tests for alcohol. *See Schmerber v. California,* 384 US 757, 86 S Ct 1826, 16 L Ed 2d 908 (1966); *State v. Osburn,* 13 Or App 92, 95, 508 P2d 837 (1973)." (Emphasis theirs)

The same is true, in our opinion, with respect to the taking of blood samples to determine blood "type," as in this case. The state was entitled to either an order or a warrant for a sample of defendant's blood insofar as defendant's constitutional rights were concerned, as held by a majority of the courts which have considered that question. *See* Annot., 46 ALR2d 1000, 1013 (1956), and 163 ALR 939, 947 (1946), and cases cited therein.

We do not agree with defendant's contention that the blood sample should be suppressed because it was taken in jail, rather than in a "medical environment," and was taken under circumstances so "brutal," "shocking" and "offensive" so as to come within the rule of *Rochin v. California,* 342 US 165 (1952), in which the police pumped defendant's stomach to retrieve drugs swallowed by him on arrest. In this case the blood sample was taken by a registered nurse and the fact that defendant resisted the taking of the

sample, resulting in its being taken by force, is immaterial to the question of the validity of the warrant. *Cf. Breithaupt v. Abrams,* 352 US 432 (1957), and *Schmerber v. California,* 384 US 757 (1966).

If this were the only error assigned by the defendant, we would not be inclined to reverse the judgment of the conviction. Because, however, we must remand the case for a new trial for other reasons we believe it proper to give further consideration to the problem, not as one involving defendant's constitutional rights, but as a matter of legal ethics and the proper administration of criminal justice.

We believe that the conduct of the deputy district attorney in securing the warrant for the blood sample from a district court without informing that court that a hearing was then pending in circuit court on substantially the same matter was contrary to the standard of legal ethics to which all attorneys should conform, in the absence of some proper explanation which does not appear from the record in this case. *Cf. State v. Robinson,* 3 Or App 200, 208, 473 P2d 152 (1970). We also believe that when such a breach of legal ethics is called to the attention of the trial court, it has a duty to consider whether contempt proceedings should be brought against such an attorney.[2]

For these reasons, we believe that a proper disposition of this question under the circumstances of this case is to suppress the blood sample obtained by the search warrant, but without prejudice to the right of the state to apply for a further order or warrant for another blood sample in preparation for a new trial in this case.

## 2. *State's impeachment of own witness.*

Defendant also charges that "[t]he prosecution's persistent efforts, through statement, inquiry, and

[2] *See* Alschuler, *Courtroom Misconduct by Prosecutors and Trial Judges,* 50 Tex L Rev 629, 673-76 (1972).

innuendo, to blacken defendant's character in the jury's eyes denied him a fair trial."

Upon examination of the record we find that in most instances of such alleged misconduct, objections by defendant were sustained and there were no motions for mistrial. The one remaining incident, however, involved error that, in our opinion, was so prejudicial as to require that defendant's motion for mistrial be granted.

That error involved the attempt by the state to impeach one of its own witnesses, one Becky Mullins, who testified that she lived in an apartment "across" from that of the prosecuting witness; that she saw defendant there during the afternoon of the alleged rape; that she and two other persons were also "there" for a short time, but that she then left and that she later heard a "yell" or a "laugh" from "that area."

On cross-examination Ms. Mullins testified that later that afternoon the prosecuting witness said that she had been raped and that "I didn't believe her."

On redirect examination Ms. Mullins testified, in response to a leading question by the prosecuting attorney, that she and defendant were "quite close friends." The prosecuting attorney then undertook to impeach her further by asking whether, in his office in the presence of himself and Virginia Hunt (a police officer), she said that when the prosecuting witness said that she had been raped Ms. Mullins "told" the prosecuting witness that she "had heard he had done it so many times before that he would go to the pen." Ms. Mullins denied making that statement before defendant's attorney objected. Defendant's objection and motion for mistrial were then denied.

The prosecuting attorney then called Virginia Hunt (the police officer) who was permitted to testify, over objection and motion for mistrial, that Ms. Mullins had stated "in the office" that she had told the prosecuting witness that if she reported the incident

"this was going to create problems for Mr. Jones because he had done it so many times before."

After further objection by defendant, the trial judge reversed his ruling and instructed the jury "to disregard the statement made by the last witness. You are directed to erase it from your mind and pay no attention to it." The court then also denied defendant's motion for mistrial.

Later during the trial, and as a part of its rebuttal evidence, the state offered the record of defendant's prior convictions, including assault and battery, disorderly conduct, criminal trespass and assault, "consumption in unlicensed public place," trespassing, trespassing "on premises," public intoxication and disorderly conduct. No record was offered, however, of any prior conviction for rape or any other sex offense.

■ It is contended by the state that ORS 45.590 expressly permits a party to impeach its own witness by proof of a prior inconsistent statement. It is well established, however, that when the attempted impeachment is on a "collateral matter" and the witness denies making the alleged statement, the party must "take the answer" and may not then call another witness to testify that the witness to be impeached made such a statement. *State v. Johnson,* 277 Or 45, 48, 559 P2d 496 (1977); *State v. Wolfe,* 273 Or 518, 526, 542 P2d 482 (1975); *Smith v. White,* 231 Or 425, 432, 372 P2d 483 (1972). The alleged statement by Ms. Mullins that defendant had "done it before" was clearly collateral to the issues in this case.

Ordinarily we do not reverse a case for the denial of a motion for mistrial in which the trial court has sustained an objection to evidence and has admonished the jury to disregard it. There may, however, be cases in which the testimony which the jury is instructed to "disregard" is so prejudicial that, as a practical matter, "the bell once rung, cannot be unrung" by such an admonishment. *Cf. Berger v. United States,* 295 US 78, 85 (1934), and *Krulewitch v. United*

*States,* 336 US 440, 453 (1949), concurring opinion by Jackson, J.[3]

In our view, this is such a case. This prosecuting attorney, well knowing that he had no proof that defendant has been previously convicted of rape (as indicated by the record of various other offenses offered by him in evidence), persisted in making comments and insinuations to that effect, including the clearly improper attempt to get before the jury the alleged statement by Ms. Mullins that he had "done it so many times before."

■ In a prosecution for rape in which, as in this case, the jury must decide between the credibility of the prosecuting witness and the defendant, the prejudice resulting from the admission of such evidence was so pervasive as to lead us to the conclusion that, as a result, defendant was denied a fair trial. While it is expected that a prosecuting attorney will be zealous in his efforts to convict a defendant believed by him to be guilty of a crime, it must also be remembered that the prosecuting attorney, as a representative of the state, owes a primary duty to see that all criminal defendants receive a fair trial. *Cf. State v. Wederski,* 230 Or 57, 62, 368 P2d 393 (1962).

For all of these reasons, the judgment of conviction is reversed and this case must be remanded for a new trial.

---

[3] *See also Groebner v. State,* 342 So 2d 94 (Fla App 1977); *People v. Williams,* 57 Mich App 521, 226 NW2d 547 (1975); *Boyde v. State,* 513 SW2d 588 (Tex Cr App 1974); Note, 54 Colo L Rev 946, 967 (1954), and cases cited therein at n.99.