Argued December 21, 1977, affirmed May 8, reconsideration allowed,
former opinion adhered to as modified July 5, petition for review allowed
November 15, 1978
See 35 Or App 155, 580 P2d 1062

STATE OF OREGON, *Respondent,*

*v.*

ROBERT BRUCE HEINTZ, *Appellant.*

(No. 17-023, CA 8026)

578 P2d 447

Edward L. Strand, Aloha, argued the cause for appellant. On the brief were Gary D. Babcock, Public Defender, Salem, and Robert C. Cannon, Deputy Public Defender, Salem.

Kent B. Thurber, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Johnson, Judges.

JOHNSON, J.

**JOHNSON, J.**

Defendant was convicted after a jury trial of manslaughter in the second degree. ORS 163.125. On appeal defendant makes several assignments of error. His first two assignments are that the trial court erred in admitting evidence of the results of blood-alcohol tests. The third assignment is that the trial court erred in not granting a mistrial. The remaining assignments do not warrant discussion.

Defendant was the driver of an automobile involved in a single car accident shortly after 4:00 a.m. on May 20, 1976. The passenger in the vehicle was killed and defendant was seriously injured. Defendant admitted to a police officer investigating at the scene of the accident that he had been drinking beer earlier. The officer also detected a moderate odor of alcohol on defendant's breath and noted that defendant's eyes were bloodshot. Defendant was then taken to the hospital for treatment. At the request of the police, blood samples were taken by a hospital lab technician to determine blood-alcohol content. The analysis was performed by a criminologist for the Oregon State Police. The criminologist is a college graduate with a bachelor of science degree and has had one year of medical technology training at the University of Oregon Medical School. She is nationally certified as a medical laboratory technician. She worked two years in a medical laboratory and four years as a criminologist for the Oregon State Police, and has performed over 100 blood-alcohol analyses. There was no evidence that she possessed a valid permit from the Health Division to perform blood-alcohol analyses.

I

Defendant, relying on *Schmerber v. California,* 384 US 757, 86 S Ct 1826, 16 L Ed 2d 908 (1966), contends that the taking of the blood sample constituted an unreasonable search and seizure because it was not taken pursuant to a valid consent or as incident to an arrest. Although other jurisdictions may have adopted

the interpretation of *Schmerber* advanced by defendant, we read that case as merely establishing that taking a blood-alcohol test is a search subject to the same constitutional requirements governing warrantless searches as any other search. *Cf. Cupp v. Murphy,* 412 US 291, 93 S Ct 2000, 36 L Ed 2d 900 (1973). A warrantless search is permissible if there was probable cause for a search and exigent circumstances. Defendant's admission that he had been drinking is substantial evidence of probable cause. There were exigent circumstances as a matter of law because of the medical fact that alcohol in the blood dissipates with the passage of time. *State v. Osburn,* 13 Or App 92, 508 P2d 837 (1973). The trial court's conclusion that the search was valid must be affirmed. *See Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968).

## II

Defendant next contends that the blood test was inadmissible because the person performing the test did not have a permit as required by ORS 487.815(1), which provides:

> "Chemical analyses of the person's breath, blood, urine or saliva, to be valid under ORS 487.545, shall be performed * * * by an individual possessing a valid permit to perform such analyses issued by the Health Division."

However, ORS 487.820 provides:

> "The provisions of the implied consent law, ORS 487.805 to *487.815,* 487.825 to 487.835, *except ORS 487.545* and subsection (3) of ORS 487.805, shall not be construed by any court to limit the introduction of otherwise competent, relevant evidence in any civil action, suit or proceedings or in any criminal action other than a violation of ORS 487.540 or a similar municipal ordinance in proceeding under ORS 482.540 to 482.560." (Emphasis supplied.)

The clear import of the latter statute is that the statutory rules concerning the introduction of evidence contained in the implied consent law, including ORS 487.815, apply only in driving while under the

influence (DUII) proceedings, ORS 487.540, and have no application to this prosecution for manslaughter. The only doubt cast on that proposition is the ambiguous language "except ORS 487.545" contained in ORS 487.820, and a footnote in *State v. Stover,* 271 Or 132, 531 P2d 258 (1975), decided under the law existing prior to the enactment of ORS 487.820.

ORS 487.545[1] is a statute applicable to any criminal or civil proceeding establishing presumptions relating to blood alcohol content and the proof of being under the influence of intoxicating liquors. The statute does not purport to govern the admissibility of evidence. However, ORS 487.815(1) prescribes a rule of admissibility which specifically refers to ORS 487.545. ORS 487.820 in turn states that the implied consent law, "except ORS 487.545" does not apply in civil and criminal proceedings other than DUII. The only rational explanation for this double negative in ORS 487.820 is that the presumptions contained in ORS 487.545 continue to apply in all civil and criminal proceedings, but the admissibility rule of ORS 487.815 and the reference therein to ORS 487.545 do not. Indeed, this is clear because ORS 487.820 specifically states that ORS 487.815 does not apply in criminal and civil proceedings other than DUII.

In *State v. Stover, supra,* the Supreme Court held that the implied consent law rules of admissibility applied in a prosecution for a criminally negligent

---

[1]ORS 487.545 provides:

"(1) At the trial of any civil or criminal action, suit or proceeding arising out of the acts committed by a person driving a motor vehicle while under the influence of intoxicants, if the amount of alcohol in the person's blood at the time alleged is less than .10 percent by weight of alcohol as shown by chemical analysis of the person's breath, blood, urine or saliva, it is indirect evidence that may be used with other evidence, if any, to determine whether or not he was then under the influence of intoxicants.

"(2) Not less than .10 percent by weight of alcohol in a person's blood constitutes being under the influence of intoxicating liquor.

"(3) Percent by weight of alcohol in the blood shall be based upon grams of alcohol per one hundred cubic centimeters of blood."

homicide under the law at the time of the trial in that case. In its opinion the court acknowledged the subsequent enactment of ORS 483.648, now ORS 487.820, and stated that an opposite result would occur under the new statute. 271 Or at 146-147 at n 10. However, the court went on to comment in a footnote as follows:

"* * * * *

"However, in *State v. Fogle,* 254 Or 268, 459 P2d 873 (1969), this court dealt with the situation where the state failed to introduce any evidence that the equipment used to conduct the breath test had been tested for accuracy by the State Board of Health as required by ORS 483.664(2)(c). Thus our decision in *Fogle* was aimed at the very trustworthiness and competency of the test results. The ruling in *Fogle* would not be affected by the passage of ORS 483.648: 'The provisions of the implied consent law shall not be construed by any court to limit the introduction of otherwise *competent,* relevant evidence. * * *' (Emphasis added)" 271 Or at 147, n 11.

In *State v. Fogle,* 254 Or 268, 459 P2d 873 (1969), the court held that a blood-alcohol test was inadmissible in a negligent homicide action because of ORS 483.664(2), now ORS 487.815(2)(c).[2] Presumably the

---

[2]ORS 487.815 in its entirety provides:

"(1) Chemical analyses of the person's breath, blood, urine or saliva, to be valid under ORS 487.545, shall be performed according to methods approved by the Health Division and by an individual possessing a valid permit to perform such analyses issued by the Health Division.

"(2) The Health Division shall:

"(a) Approve techniques or methods of performing chemical analyses that are satisfactory for determining alcoholic content of a person's blood.

"(b) Prepare manuals and conduct courses throughout the state for the training of police officers in chemical analyses of a person's breath, which courses shall include, but are not limited to, approved methods and techniques of chemical analyses, use of approved equipment and interpretation of test results together with a written examination on these subjects.

"(c) Test and certify the accuracy of equipment to be used by police officers for chemical analyses of a person's breath before regular use of such equipment and periodically thereafter at intervals of not more than 60 days, such tests and certification to be conducted by trained technicians.

*Fogle* rule necessarily also applies to ORS 487.815(1) which is at issue here. However, the court's comment that *Fogle* would not be affected by the passage of ORS 487.820 was dictum relegated to footnote status. In the absence of a definitive Supreme Court decision, we feel compelled to hold that *Fogle* was overruled by the passage of ORS 487.820. The criminologist's testimony in this case concerning the blood test was certainly competent by any common law rule of evidence. She had ample training and experience in administering blood-alcohol tests to get over the threshold of admissibility. The weight to be afforded her testimony was for the jury. Furthermore, ORS 487.820 should be liberally construed to accomplish its stated purpose, to permit "the introduction of otherwise competent, relevant evidence in any civil * * * or criminal action." A strict rule of construction could work harsh results. To illustrate, a defendant might wish to introduce a blood test performed by the most eminent hematologist in the world. Presumably under *Fogle,* such test would be inadmissible if the physician did not have a valid permit from the Health Division. The legislature, in enacting ORS 487.820, intended to avoid such results. Presumably, the legislature considered a permit system necessary in DUII prosecutions because of the tremendous volume of cases. It did not intend to extend the system to other criminal and civil proceedings where usually more substantial interests are at stake.

### III

■ Defendant testified on direct examination that on the evening of, but prior to, the accident he and his

"(d) Ascertain the qualifications and competence of individuals to conduct such analyses in accordance with one or more methods or techniques approved by the board.

"(e) Issue permits to individuals according to their qualifications. Permits shall be issued to police officers only upon satisfactory completion of the prescribed training course and written examination and the permit shall state the methods and equipment which the police officer is qualified to use. Permits shall be subject to termination or revocation at the discretion of the Health Division."

companion had attended a social gathering at which beer had been consumed. On cross-examination the prosecutor asked:

"Q Was marijuana being smoked at that party, that get together?'"

Defendant objected. The trial court ruled that it was permissible to question defendant about whether he had smoked marijuana for the limited purpose of impeaching defendant's ability to observe and remember the accident. The following colloquy then took place:

"MR. UPHAM [the prosecutor] Mr. Heintz, was marijuana being smoked at that party that you have described in your direct examination?

"A I don't know that it was that substance but there was a substance there alleged to be marijuana.

"Q Alleged to be marijuana that was smoked at the party?

"A Yes.

"MR. UPHAM: I have nothing further.

"MR. STRAND: I have nothing further.

"THE COURT: Okay. You may step down."

Defendant then moved for a mistrial on the grounds that the purpose of the questions were not to impeach defendant's ability to observe and remember, but to show that defendant was guilty of a crime other than that which he was charged. The trial court denied the motion, but admonished the jury to disregard the testimony. Defendant argues that the mistrial should have been granted. We disagree. Defendant concedes that the trial court was initially correct in permitting the line of questioning. The motion for mistrial is based on the fact that the prosecutor never asked the ultimate question: "Did you smoke marijuana?" The prosecutor probably surmised from the answers given to his foundation questions that the answer would be no. Defendant had ample opportunity to ask the ultimate question on rebuttal. Assuming, arguendo, the testimony was error, the judge instructed the jury

to disregard it. *See State v. Jones,* 279 Or 55, 62, 566 P2d 867 (1977).

Affirmed.

**THORNTON, J.,** dissenting.

In my view the majority's interpretation of ORS 487.820 as applied to ORS 487.815(1) is contrary to the intent of the legislature and inconsistent with the most recent Supreme Court case discussing this point, *State v. Stover,* 271 Or 132, 531 P2d 258 (1975), *reversing* 14 Or App 559, 513 P2d 537 (1973). *Stover* was a negligent homicide case arising prior to the passage of ORS 487.820. There the defendant claimed that evidence of a blood alcohol test should have been excluded because a blood sample was taken without his express consent, which violated the Implied Consent Law.

The court held that violation of the consent provisions of the Implied Consent Law required suppression of the blood test results, citing *State v. Annen,* 12 Or App 203, 504 P2d 1400 (1973) (also dealing with the consent provisions of the law). The court noted, however, that the enactment of ORS 487.820 following the *Annen* case would change the result in consent cases arising after passage of that statute. The court stated:

"In 1973 the legislature passed a statute which requires the suppression of chemical test results for alcohol taken in violation of the Implied Consent Law only in prosecution for driving under the influence of intoxicating liquor, ORS 483.992(2) [now ORS 487.540].

"ORS 483.648 [now ORS 487.820] provides:

" 'Implied consent law not to limit introduction of evidence in certain proceedings. The provisions of the implied consent law, ORS 483.634 to 483.646 [now ORS 487.805 to 487.815, 487.825 to 487.835], except subsection (3) of ORS 483.634 [now ORS 487.805] and ORS 483.642 [now ORS 487.545], shall not be construed by any court to limit the introduction of otherwise competent, relevant evidence in any civil action, suit or proceedings or to any criminal action

[ 183 ]

other than a violation of subsection (2) of ORS 483.992 [now ORS 487.540] or a similar municipal ordinance in proceeding under ORS 482.540 to 482.560.'

"In cases other than driving under the influence of intoxicating liquor constitutional search and seizure standards will govern the admissibility of the results of chemical tests for alcohol. *See Schmerber v. California,* 384 US 757, 86 S Ct 1826, 16 L Ed 2d 908 (1966); *State v. Osburn,* 13 Or App 92, 95, 508 P2d 837 (1973)." 271 Or at 147, n 10.

The court then went on to say:

"In *State v. Annen,* 12 Or App 203, 207, 504 P2d 1400 (1973), as in the instant case, the violation of the Implied Consent Law involved the consent provisions of the law.

"However, in *State v. Fogle,* 254 Or 268, 459 P2d 873 (1969), this court dealt with the situation where the state failed to introduce any evidence that the equipment used to conduct the breath test had been tested for accuracy by the State Board of Health as required by ORS 483.664(2)(c) [now ORS 487.815(2)(c)]. Thus *our decision in Fogle was aimed at the very trustworthiness and competency of the test results. The ruling in Fogle would not be affected by the passage of ORS 483.648 [now ORS 487.820]:* 'The provisions of the implied consent law shall not be construed by any court to limit the introduction of otherwise *competent,* relevant evidence. * * *' (Emphasis added.)" 271 Or at 147, n 11. (First emphasis supplied.)

Thus, the Implied Consent Law does not act as an additional restriction upon the admissibility of evidence in non-DUII cases insofar as constitutional consent standards are concerned. It does, however, under ORS 487.815, remain as the standard of competency of scientific evidence of intoxication.

While the court's language in *Stover* is dicta, it is consistent with the legislative history of ORS 487.820 which indicates that the statute was drafted for the sole purpose of avoiding the rule promulgated in *State v. Annen, supra,* thereby permitting the introduction of evidence of intoxication in non-DUII cases regardless of whether the defendant consented. Minutes,

Senate Committee on the Judiciary, April 16 and May 14, 1973; Minutes, House Judiciary Committee, June 22, 1973.

Further, the court's statement in *Stover* is a reasonable interpretation of the statutory scheme covering driving while intoxicated. For example, ORS 487.540(1)(a) provides:

"(1) A person commits the offense of driving while under the influence of intoxicants if he drives a vehicle while:

"(a) He has .10 percent or more by weight of alcohol in his blood as shown by chemical analysis of his breath, blood, urine or saliva made under ORS 487.805 to 487.815 and 487.825 to 487.835 * * *."

As already noted, ORS 487.545(2) provides that a person with a blood alcohol level of .10 percent or greater is under the influence of intoxicating liquor. It would be redundant to say that ORS 487.815, which expressly applies to ORS 487.545 in its entirety, is limited by ORS 487.820 to prosecutions for driving under the influence of intoxicants because ORS 487.540(1)(a) already provides for the limitations of ORS 487.815.

The only reasonable interpretation of ORS 487.815 is that the legislature intended that it be read into and qualify ORS 487.545 in all cases and that the application of ORS 487.820 be limited to the consent provisions of the Implied Consent Law. There is no rational basis for concluding that the legislature could have intended that the competency and trustworthiness of evidence in a prosecution for driving under the influence of intoxicants would be determined more strictly than in a case of manslaughter or negligent homicide. There are very substantial interests to be protected in a prosecution for manslaughter or negligent homicide, and the stringent requirements of ORS 487.815 were intended to apply to those cases as well as DUII prosecutions.

For all of the foregoing reasons I respectfully dissent.