Argued October 27, reversed and remanded December 9, 1971,
petition for rehearing denied January 4, petition for review
denied February 23, 1972

STATE OF OREGON, *Appellant, v.* MYRON
EDWARD GREENOUGH (No. 16041), *Respondent.*
491 P2d 630

*John W. Osburn,* Solicitor General, Salem, argued
the cause for appellant. With him on the brief was Lee
Johnson, Attorney General, Salem.

*Robert J. McCrea,* Eugene, argued the cause for

respondent. On the brief were Fred A. A. Divita, and Mulder, Morrow & McCrea, Eugene.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

## SCHWAB, C. J.

Defendant was convicted in the district court of driving under the influence of alcohol. ORS 483.992 (2). He appealed to the circuit court for a trial de novo and in that court filed a pretrial motion to suppress the evidence obtained by way of a blood sample taken from him while he was unconscious. The trial judge sustained this motion, and the state has appealed pursuant to ORS 138.060 (4).

The trial court's decision that the blood test results should be suppressed was based entirely on statutory grounds. The trial court reasoned:

"The Legislature has, in the court's opinion, provided an exclusive method for obtaining, testing and using tests of body fluids by enactment of the Implied Consent Law, a fair interpretation of which means that the consent of the defendant prior to search and seizure must be obtained. ORS 483.634 limits implied consent to breath tests and expressly provides that a person's refusal to submit to such a test shall not be admissible in any civil or criminal action, suit or proceeding arising out of the acts in question.

"ORS 483.636 provides:

" '*Chemical test by consent of arrested person.* Nothing in ORS 483.634 is intended to, in lieu of a request for and administration of a breath test, preclude the administration of a chemical test of the blood, urine or saliva of any person if, when re-

quested by a police officer, the person expressly consents to such a test.'

"The importance of this section is that it provides for a blood test at the request of the police officer but only if the person expressly consents to such a test * * *."

Defendant was the driver in a one-car accident in which he was injured. He was unconscious when a police officer arrived to investigate the accident. The officer detected a strong odor of alcohol on defendant's breath. The officer also interviewed one witness at the scene who led the officer to believe the defendant had been driving in an erratic manner prior to the accident. (The record before us fails to disclose the exact statement of the witness.) Based on this information, the officer decided to arrest defendant for driving under the influence, and proceeded to make out a traffic citation at the accident scene.

An ambulance took the defendant to a hospital. The police officer who was still investigating the accident told the ambulance attendants that defendant was under arrest, and that a blood sample should be taken. At the hospital, a physician withdrew a blood sample from defendant's arm. All the foregoing occurred while defendant remained in an unconscious state. Subsequent analysis of the sample revealed .23 per cent alcohol in defendant's blood.[1]

---

[1] Under the statute in effect at the time of defendant's arrest, more than .15 per cent of alcohol in the blood created a disputable presumption that a driver was under the influence of alcohol. ORS 483.642 (1)(c). This was changed by the 1971 legislature; now more than .10 per cent of alcohol in the blood creates a disputable presumption that a driver is under the influence of alcohol. Oregon Laws 1971, ch 313, Section 1, p 452. Also, the legislature passed a new statute providing that driving with .15 per cent or more of alcohol in the blood is now a separate crime. Oregon Laws 1971, ch 564, Section 2, p 990.

The question presented is whether the trial court erred in concluding that the act of withdrawing blood from defendant while he was unconscious violated any provisions of the Implied Consent Law, ORS 483.634 to 483.646.

At the outset, we note a threshold problem not touched upon in either brief. We stated in *State v. Mitchell et al*, 6 Or App 378, 487 P2d 1156 (1971), Sup Ct *review denied* (1972), and *State v. Gassner*, 6 Or App 452, 488 P2d 822 (1971), that violation of a statute, as distinguished from a constitutional provision, does not necessarily result in the suppression of evidence. (Both *Mitchell* and *Gassner* involved possible violations of the knock and announce statute, ORS 133.290.) So even assuming *arguendo* a violation of the Implied Consent Law, it might not follow automatically that the evidence in question must be suppressed.

Nevertheless, under the authority of *State v. Fogle*, 254 Or 268, 459 P2d 873 (1969), if a violation of the Implied Consent Law was shown, the evidence was rightfully suppressed. In that case, the Oregon Supreme Court held chemical-sobriety-test evidence to be inadmissible because compliance with the detailed requirements of the statute, ORS 483.644, was not proven. Since we see no distinction for present purposes between a ruling during trial that evidence is inadmissible, and a pretrial ruling suppressing evidence, we believe *Fogle* requires affirmance if there was a violation of the Implied Consent Law. *Accord: Kyhl v. Commonwealth*, 205 Va 240, 135 SE2d 768 (1964).

We are, however, unable to agree with the trial court's interpretation of the Implied Consent Law. Finding no violation thereof, we reverse.

ORS 483.636, relied upon by the trial court, must be interpreted in context with the balance of the Implied Consent Law, and by considering the prior statutes that the Implied Consent Law replaced.

Before the Implied Consent Law was enacted in 1965, prior Oregon statutes applied the same requirements to chemical sobriety tests of "blood, breath, urine or other bodily substance." Oregon Laws 1941, ch 430, Section 1, p 743; Oregon Laws 1955, ch 297, Section 1, p 328. The Implied Consent Law put the emphasis on breath tests. ORS 483.634. The legislative history indicates this change of emphasis was because breath testing devices, properly used, had become highly reliable, were relatively inexpensive, and the breath test could be administered by persons without formal medical training.[2] *See, State v. Fogle,* supra (discussing the Sobermeter testing device).

But the legislature was also aware that breath testing devices might not always be readily available to an arresting officer, so also enacted ORS 483.636, quoted above. Under that section, instead of requesting a breath test, the officer can request the arrested person to submit to a test of his "blood, urine or saliva." In other words, ORS 483.634 governing breath tests and ORS 483.636 governing tests of blood, urine or saliva enact the same basic rules governing all of these tests. The only difference would be which test the officer requests the arrested person to submit to, which presumably would be based on the availability of different kinds of test equipment.

The policy behind the Implied Consent Law is

---

[2] *Compare* ORS 483.640, which provides that only a duly licensed physician can withdraw blood to be used in a sobriety test.

clear; it is to remove drunk drivers from the highways. When a driver is lawfully arrested for driving under the influence, the police may request that he submit to a chemical sobriety test. The arrested person then has two choices; he can either consent to the test, or refuse it.[9]

Although this election rests with the arrested person, whatever decision he makes effectuates the policy behind the Implied Consent Law. If he consents to the test, the results are admissible against him; and a conviction of drunken driving, facilitated by the results of the test, results in the suspension of his driver's license. ORS 482.430 (2)(a). If he refuses to consent to the test, no test can be given, and the fact that he refused is inadmissible, ORS 483.634(3), but the refusal may result in the suspension of his license. ORS 482.540.

However, this analysis of the statute applies only to a person who is conscious, since the acts of consenting to or refusing the sobriety test presuppose a conscious person. Here the defendant was unconscious at the time a sample of his blood was taken.

[9] We recognized in Thorp v. Dept. of Motor Vehicles, 91 Adv Sh 1795, 4 Or App 552, 480 P2d 716 (1971), that under the Implied Consent Law a driver has the prerogative of refusing to allow any chemical test:

"* * * The legislation does not require that a driver so charged take the test, but encourages him to comply with a request that he do so by the device of imposing a 90-day forfeiture of his driver's license if he refuses * * *." 91 Adv Sh at 1797.

Courts in other states have reached the same result, although they have phrased their holdings in a variety of ways. *See,* Duckworth v. State, 309 P2d 1103, 1105 (Okla Cr 1957) ("the defendant [had] a fundamental right to refuse the test"); Caldwell v. Commonwealth, 205 Va 277, 136 SE2d 798, 801 (1964) (the accused "has the power to refuse to submit to the test but no right to refuse it").

If the question before us were whether an unconscious person could have his license suspended because he refused to submit to a sobriety test, it is clear that under the Implied Consent Law the answer would have to be in the negative. The sanction of administrative suspension of a driver's license applies only when a driver actively refuses to comply with a request to take a breath test in accordance with ORS 483.634, or a request to take some other test under ORS 483.636. Cf., *Garcia v. Dept. of Motor Vehicles,* 253 Or 505, 456 P2d 85 (1969). Not only is it impossible for an unconscious person to refuse or consent to anything, but the procedures of ORS 483.634 simply cannot be read as applying to an unconscious person.[4] Courts in other states have interpreted their Implied Consent Laws in this manner. *See, Foster v. Tofany,* 31 App Div2d 987, 297 NYS2d 847 (1969); cf. *Application of Scott,* 5 App Div2d 859, 171 NYS2d 210 (1958).

Instead, the question squarely presented is whether anything in the Implied Consent Law makes inadmissible in a criminal case the test results of a blood sample taken from an unconscious person when the police have probable cause to believe that person was driving under the influence.[5]

---

[4] The statute requires that the police: (1) request the arrested person submit to the test; (2) inform the arrested person of the consequences of his refusal; and (3) inform the arrested person of his right to have a separate test administered by his own physician. ORS 483.634. It seems implausible that the legislature expected the police to go through these motions if the person under arrest was unconscious.

[5] The trial court findings of fact included an explicit finding that defendant was under arrest at the time the blood sample was withdrawn from his arm, and an implicit finding that such arrest was lawful. Neither party has taken issue with those findings in this court.

The legislative history of the Implied Consent Law sheds little light on this question. Oregon's first statute concerning chemical tests for persons charged with driving under the influence of alcohol was enacted in 1941. It provided:

> "* * * [T]he officer * * * making the arrest may cause a chemical analysis to be made of the blood, breath, urine or other bodily substance of the arrested person, unless the arrested person objects thereto, in order to determine the amount of alcohol then in such person's blood * * *." Oregon Laws 1941, ch 430, Section 1, p 743.

No reference materials are available from the 1941 legislature to pursue the legislative intent at that time. The 1941 Act was later codified as ORS 483.630. In 1955 the legislature made substantial amendments to ORS 483.630, most of them not here relevant. As then amended, ORS 483.630 (1) read:

> "* * * [T]he officer * * * making the arrest may, upon written consent of the arrested person, cause a chemical analysis to be made of the blood, breath, urine or other bodily substance of the arrested person * * *." Oregon Laws 1955, ch 297, Section 1, p 328.

In 1961, ORS 483.630 was again amended. The phrase, "written consent of the arrested person," was changed to read: "consent of the arrested person." Oregon Laws 1961, ch 713, Section 1, p 1463. Neither the legislative history of the 1955 amendments nor the history of the 1961 amendments is relevant to the present problem.

In 1965 the legislature repealed ORS 483.630 and replaced it with Oregon's Implied Consent Law, ORS 483.634 to 483.646. Comprehensive reference ma-

terials are available to research the legislative history of the 1965 change. From these materials we learn that the legislature was concerned that the prior statutory emphasis on the consent of the arrested driver[6] had produced a situation where few drivers were consenting to chemical sobriety tests. Thus, there was an explicit intent in 1965 to move away from the consent concept; this was achieved primarily through the concept of implied consent.

This observation might lead to the conclusion that the legislature's failure to provide for chemical sobriety tests for an unconscious person was an oversight. Yet, as originally introduced in the 1965 legislature, the bill that was subsequently enacted as the Implied Consent Law read:

> "Any person who would otherwise be subject to the provisions of subsection (1) of this section but who is dead, unconscious or otherwise in a condition rendering him incapable of taking a breath test shall be deemed to have given consent, subject to sections 2 to 9 of this 1965 Act, to a chemical test of his blood for determining its alcoholic content. The inability of any person to refuse a test under this section shall not be deemed a withdrawal of consent and a test may be administered subject to sections 2 to 9 of this 1965 Act."[7] HB 1111, 1965 Legislative Assembly.

---

[6] "Unless the arrested person objects," Oregon Laws 1941, ch 430, Section 1, p 743;

"Upon the written consent of the arrested person," Oregon Laws 1955, ch 297, Section 1, p 328; and

"Upon the consent of the arrested person," Oregon Laws 1961, ch 713, Section 1, p 1463.

[7] Many of the implied consent laws in other states do contain some explicit provision for sobriety tests to be administered to unconscious persons. *See,* e.g., the Iowa statute discussed in State v. Findlay, 259 Iowa 733, 145 NW2d 650 (1966).

This language was amended out of the bill by an unanimous vote of the House Judiciary Committee. The Minutes of that committee are not enlightening as to why this provision was eliminated. Perhaps it was the intention to eliminate the possibility of a chemical sobriety test when the arrested driver was unconscious. Or perhaps the quoted provision was felt to be unnecessary because the Implied Consent Law was not intended to affect the law concerning unconscious persons. In this connection we note that *State v. Cram,* 176 Or 577, 160 P2d 283, 164 ALR 952 (1945), sanctioned use of a blood sample taken from an unconscious defendant in a drunken driving case.

We find nothing in the Implied Consent Law indicating that the sobriety test results in this case, based on a blood sample taken from the defendant while unconscious, should be inadmissible. Instead, we believe the evolution of these statutes indicates a general intent to make sobriety test results more available for use as evidence in driving under the influence trials.

We have found no appellate decisions from any other state holding that the taking of a blood sample from an unconscious person violates any statute. The authorities appear to be to the contrary:

> "In many accident cases, the person is actually unconscious at the time the test is given or the sample drawn and is therefore in no position to voice disapproval. * * * [M]ost authorities have held that evidence so obtained is admissible * * *." Slough and Wilson, *Alcohol and the Motorist: Practical and Legal Problems of Chemical Testing,* 44 Minn L Rev 673, 689 (1960).

> "Where the subject is unconscious at the time the sample is drawn, in actuality he neither consents nor refuses. Without express statutory prohibition

or objection raised on constitutional grounds, evidence of test results is generally admissible in such cases." 44 Minn L Rev, supra, at 689, n 51.

Significantly, in California when there was no statute governing chemical sobriety tests, analysis of blood samples taken from unconscious drivers was held to be admissible. *People v. Lewis*, 152 Cal App2d 824, 313 P2d 972 (1957). California enacted an Implied Consent Law in 1966. Subsequent California cases have adhered to the holding that such evidence taken from an unconscious driver is admissible. *People v. Bustos*, 247 Cal App2d 422, 55 Cal Rptr 603 (1966). Apparently courts in that state find no statutory violation when blood is taken for a sobriety test from an unconscious driver.

As instructive as these other authorities are, we must ultimately base our decision on the policy behind the Implied Consent Law. As noted above, the policy is one of removing the danger of drunk drivers from the highways. For drivers who are conscious when requested to submit to a sobriety test, this is accomplished whether they accept or refuse the test, through possible conviction for driving under the influence, or administrative suspension of license, respectively. We see no reason an unconscious driver should escape the operation of the statutory scheme, especially as in this case, when that condition results from an accident caused in whole or in part by the defendant's intoxication.

As suggested above, under the Implied Consent Law an unconscious driver probably cannot be regarded as having refused to submit to the test and therefore subject to license suspension by administrative action. If the statute were also interpreted to

mean that the test results in this case are inadmissible because of a violation of that law, the defendant's fortuitous state of unconsciousness would result in his totally escaping the operation of the law, which would frustrate the clear legislative policy.

We therefore hold the test results in question are not inadmissible by reason of any violation of the Implied Consent Law. The trial court did not pass on any constitutional issues, and thus we do not reach any. We note, however, that all possible constitutional issues seem to have been decided adversely to defendant in *Schmerber v. California,* 384 US 757, 86 S Ct 1826, 16 L Ed 2d 908 (1966). *See also, State v. Cram,* supra.

Reversed and remanded.