Argued July 23, affirmed August 27, petition for rehearing denied
October 3, 1973, petition for review pending

## STATE OF OREGON, *Respondent, v.* JOHN FRANKLIN STOVER (No. 5277), *Appellant.*

513 P2d 537

560

*Donald D. Yokom,* Pendleton, argued the cause and filed the brief for appellant.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

SCHWAB, C. J.

Defendant, while driving about 43 miles from Pendleton, ran into a bridge abutment. Defendant and all of his passengers, i.e., Mrs. McMurtry and three of

her children, were injured. One of the children, Patrick McMurtry, aged 5, died the day of the accident.

Four days after the fatal accident defendant was issued a citation for driving with more than .15 percent blood alcohol, a misdemeanor under ORS 483.999 (1). A little more than two months later, defendant was charged with criminally negligent homicide, a felony under ORS 163.145. The district attorney then sought and obtained a dismissal of the misdemeanor charge that was still pending in district court.

At trial on the negligent homicide charge, Mrs. McMurtry testified that defendant had consumed about four or five six-packs of beer on the day of the accident, and that in her opinion defendant was under the influence of intoxicants. There was also evidence that a blood sample taken from defendant at the hospital about two to three hours after the accident contained .16 percent alcohol.

Defendant was convicted, and appeals. He contends the trial court erred in: (1) denying his plea that the negligent homicide trial constituted double jeopardy since the misdemeanor charge arising from the same incident had previously been dismissed; (2) overruling his marital privilege objections to the testimony of Mrs. McMurtry, who he claims is his common law wife under the laws of Idaho; and (3) permitting the blood alcohol test results to be introduced over objections based on claims that the blood sample tested was not obtained in a manner that complied with the Implied Consent Law, ORS 483.634 et seq.

█ The separate felony and misdemeanor charges brought against defendant in this case were for the same offense under the three-part test of *State v.*

*Brown,* 262 Or 442, 448, 497 P2d 1191 (1972). *See, State v. Leverich,* 14 Or App 222, 511 P2d 1265, Sup Ct *review allowed* (1973). However, unlike in *Brown* and *Leverich,* in this case jeopardy never attached on the misdemeanor charge which was dismissed in the district court on the prosecutor's motion. Thus, the double jeopardy guarantee was no bar to trial on the negligent homicide charge.

■ Mrs. McMurtry testified that she and defendant had lived together intermittently in Idaho, that she had a child by defendant in Idaho, and that she at least occasionally used the name Mrs. Stover. While her testimony is somewhat equivocal, it is capable of the interpretation that defendant and Mrs. McMurtry regarded themselves as husband and wife while living in Idaho. Defendant did not testify about his relationship with Mrs. McMurtry. Assuming but not deciding that this evidence was sufficient to establish a common law marriage under Idaho law, Mrs. McMurtry could nevertheless testify in this case because of ORS 139.-320, which states:

> "* * * [I]n all cases of personal violence upon either [spouse] by the other or of personal violence or other unlawful act committed against any minor child of either or both of the parties, the injured party, husband or wife, shall be allowed to testify against the other * * *."

Finally, we hold the blood sample tested for alcohol content was obtained in compliance with the Implied Consent Law.

Investigating officers at the accident scene observed a number of beer cans in defendant's car and detected the odor of beer on defendant's breath. While defendant was en route to the hospital in an ambulance, the officers radioed ahead and requested hospital per-

sonnel to obtain a sample of defendant's blood to test for alcohol content. Defendant was conscious at the hospital. A lab technician told defendant he was going to take a blood sample, and proceeded to do so. Defendant did not testify; the only testimony about the taking of the blood sample came from the lab technician, who stated:

"Q [By the prosecutor] Okay. Did you tell Mr. Stover that you in fact were going to take a blood sample from him?

"A Yes, I did.

"Q Did you request his permission at all or just tell him?

"A No. We just told him.

"* * * * * *

"Q Okay. Did Mr. Stover say anything?

"A Yes.

"Q What did he say?

"A He says, 'Give me a break.'

"Q Did he say anything else?

"A No.

"* * * * * *

"Q [By defense counsel] What did this [i.e., defendant's statement] indicate to you?

"A That he probably knew what we were taking the blood for.

"Q Would it indicate that he didn't want you to take some blood?

"A Probably so.

"Q And you didn't request any more permission from him, then, and you just went ahead and took the sample?

"A That is correct."

ORS 483.636 provides:

"Nothing in ORS 483.634 is intended to, in lieu of a request for and administration of a breath test,

preclude the administration of a chemical test of the blood, urine or saliva of any person if, when requested by a police officer, the person expressly consents to such a test."

In *State v. Greenough,* 7 Or App 520, 491 P2d 630 (1971), Sup Ct *review denied* (1972), we held the Implied Consent Law did not prohibit taking a blood sample from a person who was unconscious when the police had probable cause to believe he had been driving under the influence just before the accident that rendered him unconscious. In reaching that conclusion we interpreted ORS 483.636 in conjunction with the rest of the Implied Consent Law and concluded the "expressly consents" phrase in ORS 483.636 means, in effect, "unless expressly refuses." In *State v. Annen,* 12 Or App 203, 504 P2d 1400, Sup Ct *review denied* (1973), we held that ORS 483.636 did prohibit blood alcohol test results being introduced in evidence when the blood sample tested had been taken over a driver's express refusal.

■ In this case, the trial court heard lengthy arguments concerning the effect of *Greenough* and *Annen.* Applying those cases to the foregoing testimony, the trial court was entitled to conclude that defendant did not unequivocally refuse to submit to the taking of a blood sample. While the testimony may indicate defendant was reluctant to submit to a blood test, *Annen* only holds that an express refusal to submit prohibits proceeding with a blood test. Thus, this case is distinguishable from *Annen.*

■ ■ Defendant also complains that the blood sample used in the test in question was not obtained in compliance with ORS 483.640, which provides:

"In conducting a chemical test of the blood, only

a duly licensed physician or a person acting under his direction or control may withdraw blood or pierce human tissues."

The obvious purpose of ORS 483.640 is to insure that only persons who are medically trained and competent will withdraw blood for chemical testing.[1] When blood samples are taken, ORS 483.640 minimizes the impact of that procedure on the driver in question, and maximizes the chances that procedures will be used that do not contaminate the blood sample in such a way as to affect a subsequent test of it for alcohol content. Given these probable legislative purposes, we conclude the requirement that blood be withdrawn by "a person acting under * * * [the] direction or control" of a licensed physician means only that blood be withdrawn in a medically accepted manner by someone who is ordinarily supervised by physicians; the statute does not literally mean that a physician must be physically present when the blood is withdrawn. This intent is most clearly expressed in the statutory phrase "direction *or* control." (Emphasis supplied.)

■ In this case, the blood sample was taken from defendant in a hospital, by a registered medical technologist who had withdrawn blood hundreds of times before, and who testified that his work at the hospital

---

[1] The concurring opinion contends that the Implied Consent Law, which ORS 483.640 is a part of, is not applicable in this case because defendant was not arrested for driving under the influence of intoxicating liquor before his blood was withdrawn. This analysis attributes to the legislature the intent that drivers arrested for driving under the influence of liquor should enjoy the protection of ORS 483.640, but that drivers not arrested, or arrested for something other than driving under the influence of liquor, should not enjoy the protection of ORS 483.640. This would lead to the conclusion that there would be a statutory limit on who could "withdraw blood [from] or pierce human tissues" of dri-

is done "for the doctors there." This establishes sufficient compliance with the provisions of ORS 483.640.

Affirmed.

THORNTON, J., specially concurring.

I concur in the result, but for the reasons stated in my dissenting opinion in *State v. Annen,* 12 Or App 203, 209, 504 P2d 1400, Sup Ct *review denied* (1973), I do not agree with that portion of the majority opinion which concludes that the Implied Consent Law applies under the facts of this case. The Implied Consent Law applies only to "* * * a person under arrest for driving a motor vehicle while under the influence of intoxicating liquor * * *." ORS 483.634 (2). Inasmuch as defendant was not placed under arrest for driving while under the influence of intoxicating liquor prior to the withdrawal of his blood for the chemical test, the provisions of the Implied Consent Law do not apply.

I would affirm on the authority of *Breithaupt v. Abram,* 352 US 432, 77 S Ct 408, 1 L Ed 2d 448 (1957), and *Schmerber v. California,* 384 US 757, 86 S Ct 1826, 16 L Ed 2d 908 (1966), rather than the Implied Consent Law. There was ample evidence to sustain the trial judge's finding that the investigating officer had probable cause to require defendant to submit to a blood alcohol test.

---

-vers arrested for driving under the influence of liquor, but there would be no statutory limit on who could "withdraw blood [from] or pierce human tissues" of other drivers.

Unable to perceive any rational basis upon which the legislature could have possibly intended such results, we disagree that the Implied Consent Law is inapplicable in this case.