Argued September 6, 1974, reversed and remanded
January 30, 1975

# STATE OF OREGON, *Respondent, v.* JOHN FRANKLIN STOVER, *Petitioner.*

531 P2d 258

134

*Donald D. Yokom*, of Walton & Yokom, Pendleton, argued the cause and filed a brief for petitioner.

*Thomas H. Denney*, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL, BRYSON and SLOPER, Justices.

HOWELL, J.

The defendant was convicted of criminally negligent homicide in the circuit court for Umatilla County. The conviction was upheld by the Court of Appeals. We granted review.

On May 4, 1972, the defendant was involved in a one-car accident in which a child passenger was killed. The investigating officer saw empty beer cans in the car and suspected that the defendant was under the influence of intoxicating liquor. The defendant was taken to a hospital and while en route the officer radioed ahead and requested the hospital take

a sample of the defendant's blood. At the hospital the sample was taken.

The defendant was cited four days later for the crime of driving with .15% or more by weight of alcohol in his blood. ORS 483.999. Approximately two months later a secret indictment was returned by the grand jury charging the defendant with criminally negligent homicide, ORS 163.145, in the death of the child. On December 14, 1972, the charge of driving with .15% or more by weight of alcohol in the blood was dismissed upon motion of the district attorney.

At trial the defendant entered a plea of former jeopardy, alleging that the dismissal of the misdemeanor charge was a bar to further prosecution for crimes arising out of the same transaction. The trial court denied his plea and the defendant was convicted of criminally negligent homicide. The conviction was affirmed by the Court of Appeals, *State v. Stover,* 14 Or App 559, 513 P2d 537 (1973).

This court granted review to consider (1) the effect of a dismissal of a misdemeanor charge on a subsequent felony prosecution for a crime arising out of the same transaction, and (2) the interpretation of the Oregon Implied Consent Law, ORS 483.634 et seq., and its application to a prosecution for criminally negligent homicide.

The defendant contends that our decision in *State v. Brown,* 262 Or 442, 497 P2d 1191 (1972), as well as the provisions of ORS 134.140(2), would prohibit a trial for criminally negligent homicide when a prior charge of driving with .15% or more by weight of alcohol in the blood was dismissed on application of the district attorney. We must first determine if the dismissal was proper in this case.

In a recent case both this court and the Court of Appeals, by dicta, questioned whether a misdemeanor not initiated by indictment could ever be dismissed upon application of the district attorney. *State v. Leverich*, 14 Or App 222, 511 P2d 1265 (1973), *aff'd* 269 Or 45, 522 P2d 1390 (1974). This court stated:

"But ORS 134.160 provided: .

'The entry of a nolle prosequi is abolished, and the district attorney cannot discontinue or abandon a prosecution for a crime, except as provided in ORS 134.150.'

"And ORS 134.150 provided:

'The court may, . . . upon the application of the district attorney, and in furtherance of justice, order an action, *after indictment,* to be dismissed; . . .'

"* * * * *.

"Under 134.160 and 134.150 the prosecution of the reckless driving charge (there having been no indictment) could not have been dismissed on application of the district attorney, and it would not seem that a dismissal for the purpose of consolidating the misdemeanor charge with the felony charge in the circuit court could reasonably be held to be an exception to the statutory prohibition. * * *" (Emphasis in original, footnote omitted.) 269 Or at 49-50.

The Court of Appeals, interpreting the same two statutes, said:

"* * * If these two statutes, which date back to Deady's Code of 1864, are read literally, it is impossible for a district attorney to move to dismiss a criminal action in district court based on a complaint, as distinguished from an indictment. * * *" 14 Or App at 228.[1]

---

[1] The Court of Appeals went on to state that our decision in State v. Brown, 262 Or 442, 497 P2d 1191 (1972), was, in

At first glance these statutes seem to support the proposition that an action could not be dismissed unless it was instituted by means of an indictment. However, a careful examination of the legislative history of ORS 134.150 and 134.160[2] does not support this interpretation.

■ ORS 134.150 and 134.160, passed in 1864, were originally codified in Deady's Code, Code of Criminal Procedure, ch XXXI, §§ 323 and 324.[3] The Code of Criminal Procedure dealt with procedure in circuit courts of the state and provided that no person could be tried for the commission of a crime except by indictment. Deady's Code, Code of Criminal Procedure,

---

effect, an exception to the "rule" that a misdemeanor not instituted by indictment could not be dismissed upon application of the district attorney. 14 Or App at 229. This court disagreed and held that dismissal for the purpose of consolidation could not be read as an exception to the statutory prohibitions. 269 Or at 50.

[2] ORS 134.150 and 134.160 have been renumbered ORS 135.755 and 135.757. ORS 134.150 was amended by the 1973 Oregon Criminal Procedure Code to alleviate the problem presented in the instant case. ORS 135.755 now provides:

"Dismissal on motion of court or district attorney. The court may, either of its own motion or upon the application of the district attorney, and in furtherance of justice, order the proceedings to be dismissed; but in that case, the reasons of the dismissal shall be set forth in the order, which shall be entered in the journal."

[3] ORS 134.150 and ORS 134.160 are identical in all material respects to Iowa Code of 1851, §§ 3251 and 3252. Both the Oregon and Iowa laws were apparently taken from the Fourth Report of the Commissioners on Practice and Pleadings, Code of Criminal Procedure, Title XII, ch V at 195-196 (1849), or the New York Code of Criminal Procedure (Final Report), Title XI, ch VII at 341-345 (1850). Iowa, however, amended its law to delete the reference to "after indictment." See Iowa Code of 1897, § 5539. See also Brown, The Sources of the Alaska and Oregon Codes, 2 UCLA-Alaska L Rev 15 (1972); 2 UCLA-Alaska L Rev 87 (1973).

ch I, § 5. Except for those tried in justice court, all misdemeanors had to be initiated by indictment. Thus, it seems that when the legislature passed a statute providing that an action may be dismissed after indictment, it was referring merely to the formal initiation of the charge against the defendant. As a defendant may now be charged by complaint in a district court (which did not exist at the time of the passage of ORS 134.150), we interpret ORS 134.150 to mean that the court may order an action to be dismissed after the formal institution of the action, whether that be by indictment or by complaint.

Our conclusion is also supported by reference to other statutes. ORS 134.020, relating to the compromise of crimes, provided:

> "134.020 Satisfaction of injured person; discharge of defendant. If the party injured appears before the court at which the defendant is bound to appear, at any time *before trial on an indictment* for the crime, and acknowledges in writing that he has received satisfaction for the injury, the court may, in its discretion, on payment of the costs and expenses incurred, order all further proceedings to be stayed upon the prosecution and the defendant to be discharged therefrom; but the order and the reasons therefor must be entered in the journal." (Emphasis added.)

ORS 134.120, dealing with speedy trials, provided:

> "Delay in bringing defendant to trial. If a defendant *indicted* for a crime, whose trial has not been postponed upon his application or by his consent, is not brought to trial within a reasonable period of time, the court shall order the *indictment* to be dismissed."④ (Emphasis added.)

---

④ ORS 134.020 and 134.120 have been renumbered ORS 135.-705 and 135.747. They were also amended by the 1973 Oregon Criminal Procedure Code.

These statutes were also first codified in Deady's Code, Code of Criminal Procedure, ch XXX, § 316 and ch XXXI, § 320. To hold that a misdemeanor may be dismissed due to compromise or due to delay only if it was instituted by indictment would do great harm to the legislative intent. Indeed, the statutes dealing with dismissal for compromise are applicable only to misdemeanors, ORS 134.010 (renumbered ORS 135.-703), and we take notice of the fact that the vast majority of misdemeanor prosecutions in this state are not instituted by indictment.

Finally, our decision that a misdemeanor initiated by other than an indictment may be dismissed upon application of the district attorney is supported by the requirements of sound judicial administration. There are many cogent reasons why a district attorney would wish to move for the dismissal of a misdemeanor complaint. To require these unwanted and perhaps unjustified complaints to either remain on the docket in perpetuity or await a motion to dismiss by the defendant would create a substantial congestion in our courts. We do not believe that the legislature intended this result.[5]

■■ Therefore, in the instant case we hold that the charge of driving with .15% or more by weight of alcohol in the blood was properly dismissed upon application of the district attorney.[6]

---

[5] While not expressly dealing with the problem presented in the instant case, this court and the Court of Appeals have been presented with cases where charges against a defendant, not initiated by indictment, were dismissed. This procedure was never questioned. See e.g., State v. Mayes, 245 Or 179, 421 P2d 385 (1966); State v. Laguardia, 11 Or App 75, 501 P2d 1005 (1972).

[6] In State v. Leverich, 269 Or 45, 522 P2d 1390 (1974), and State v. Laguardia, supra n. 5, it was indicated that it

██ The defendant, however, contends that such a dismissal in district court bars the state from prosecuting the defendant in circuit court for the crime of criminally negligent homicide. He cites *State v. Brown,* 262 Or 442, 497 P2d 1191 (1972), in support of this contention. However, in *Brown* we were presented with the situation where the defendant was subjected to two trials for crimes arising out of the same criminal transaction. Jeopardy does not attach until the jury is sworn or, if the judge is the trier of fact, until the first witness is sworn, or until the defendant is convicted on a plea of guilty. *See State v. Buck,* 239 Or 577, 398 P2d 176, 399 P2d 367 (1965); *State v. Leverich,* supra. *See also* Sigler, Double Jeopardy 83 (1969); Annot., 49 ALR3d 1039 (1973). This court stated in *State v. Reinhart,* 26 Or 466, ·38 P 822 (1895):

"\* \* \* By all the authorities, the mere com-

may be improper for the state to charge a defendant with the same offense in two different courts at the same time. This statement, if read literally, *is* incorrect. A defendant may properly be *charged* with the same offense in two different courts. However, he may not be *tried* for that offense in both courts. State v. Brown, 262 Or 442, 497 P2d 1191 (1972).

Adherence to the language in State v. Leverich, supra, in which this court said that a misdemeanor not instituted by indictment could not be dismissed and that a defendant could not be charged with the same offense in two different courts at the same time would create insurmountable obstacles for district attorneys in this state. For example, in the case at bar where the defendant is charged with a misdemeanor in district court and a felony in circuit court, if the prosecutor was not allowed to charge the defendant with the same offense in two different courts and was not allowed to dismiss the misdemeanor in district court, his only alternative for prosecution would be to dismiss the felony and proceed on the misdemeanor. Obviously this is an unacceptable result. As noted above in this opinion, we will no longer follow the rule that a misdemeanor not instituted by indictment may not be dismissed or that a defendant may not be charged with the same offense in two different courts at the same time.

mencement of a criminal proceeding does not put the defendant in jeopardy while there is no jury to decide the question of guilt, and therefore the dismissal or discontinuance of such a proceeding before jeopardy attaches cannot be pleaded in bar of another prosecution for the same offense, unless by the provisions of some statute to that effect: [Citing authority]." 26 Or at 472-73.

When a prosecution is dismissed prior to trial, jeopardy does not attach, and Article I, Section 12, of our constitution does not bar a subsequent trial for a crime arising out of the same criminal transaction.

The defendant also asserts that his trial for criminally negligent homicide is barred by ORS 134.140(2) which provided:

"An order for the dismissal of a charge or action as provided in ORS 134.010 to 134.160, is a bar to another prosecution for the same crime if the crime is a misdemeanor; but is not a bar if the crime charged is a felony."[7]

He contends that the dismissal of ORS 483.999, a misdemeanor, was a bar to any further prosecution arising out of the same transaction.

We do not feel the defendant's interpretation of the statute is correct. The defendant confuses the statutory bar against "another prosecution *for the same crime*" (ORS 134.140(2)) with the constitutional prohibition against placing a defendant in double jeopardy by allowing two trials for crimes arising out of

---

[7] ORS 134.140(2) has been renumbered ORS 135.753(2). It was amended by the 1973 Criminal Procedure Code and now provides:

"(2) An order for the dismissal of a charge or action, as provided in ORS 135.703 to 135.709 and 135.745 to 135.757, is a bar to another prosecution for the same crime if the crime is a Class B or C misdemeanor; but it is not a bar if the crime charged is a Class A misdemeanor or a felony."

the same transaction. As noted above, the defendant was not placed in jeopardy by the dismissal of the first charge. Thus "crime" as used in ORS 134.140(2) is not to be interpreted broadly to include all crimes arising out of the same criminal transaction. It is clear that criminally negligent homicide and driving with .15% or more by weight of alcohol in the blood are separate and distinct crimes for purposes of ORS 134.140(2). *See State v. Leverich,* supra at ——; *Ex Parte Jung Shing,* 74 Or 372, 145 P 637 (1915); *State v. Borders,* 9 Or App 385, 496 P2d 243 (1972).

Our interpretation of ORS 134.140(2) is strengthened by reference to Iowa cases interpreting an identical provision in their law.[9] *See* Iowa Code Ann § 795.5 (1950). In *State v. Dickson,* 200 Iowa 17, 202 NW 225 (1925), the defendant was charged in justice court with assault and battery. That charge was dismissed and the defendant was subsequently indicted for assault with intent to do great bodily injury. The defendant asserted that the above statute was a bar to the prosecution on the greater crime. The court held:

> "The statutory prohibition has no relevancy to the instant indictment, which involves a higher and different offense from that charged in the information." 202 NW at 226.

*See also State v. Reinhard,* 202 Iowa 168, 209 NW 419 (1926).

Our interpretation of ORS 134.140(2) is not contrary to our prior holding in *State v. Mayes,* 245 Or 179, 421 P2d 385 (1966). In that case the defendant was charged with driving while under the influence of

[9] ORS 134.140(2) is substantially identical to Iowa Code, Revision of 1860, § 5013, and was also apparently taken from the 1849 or 1850 Report of the New York Commissioners. See n. 3, supra.

intoxicating liquor in violation of the Portland Traffic Code. This charge was dismissed and the defendant was charged with driving while under the influence of intoxicating liquor in violation of ORS 483.992(2). The court held that the dismissal of the first offense was a bar to further prosecution under ORS 483.992(2):

> "We hold that ORS 134.140(2) applies alike to city and state prosecution whenever: (a) the case that was dismissed was a prosecution for an offense which carried the same possibility of a jail sentence and (b) *the same facts are alleged in both prosecutions.*" (Emphasis added.)  245 Or at 183.

It is clear that *State v. Mayes,* supra, was limited to situations where the defendant was prosecuted for the same crime under the statutes of different sovereignties.

The defendant next contends that the trial court erred in admitting the results of a test conducted in a sample of his blood which was withdrawn by a lab technician at the hospital. In support of this contention the defendant relies on the Oregon Implied Consent Law, ORS 483.634 et seq., and specifically on ORS 483.636, which provides:

> "Nothing in ORS 483.634 is intended to, in lieu of a request for and administration of a breath test, preclude the administration of a chemical test of the blood, urine or saliva of any person if, when requested by a police officer, the person *expressly consents* to such a test." (Emphasis added.)

The evidence at the hearing on the motion to suppress clearly indicates that the defendant did not consent to the taking of a blood sample. In fact, the laboratory attendant testified that the defendant did not want the sample taken.

The Court of Appeals held that the statutory requirements for consent were complied with. Relying on *State v. Greenough,* 7 Or App 520, 491 P2d 630 (1971), the court said:

"* * * [W]e interpreted ORS 483.636 in conjunction with the rest of the Implied Consent Law and concluded the 'expressly consents' phrase in ORS 483.636 means, in effect, 'unless expressly refuses.' * * *" 14 Or App at 564.

The court then held that, as the defendant had not expressly refused the blood test, the blood sample was admissible.

There appears to be much confusion surrounding the interpretation of the consent provisions of the Implied Consent Law. In *State v. Greenough,* supra, the Court of Appeals reversed a circuit court order suppressing evidence of the results of a blood test. ORS 483.992(2). There, the blood was taken from the driver when he was unconscious in the hospital. The court held that the Implied Consent Law adopted the "same basic rules" with regard to a chemical test of the breath on the one hand and a chemical test of the blood, urine or saliva on the other. "The only difference would be which test the officer requests the arrested person to submit to * * *." 7 Or App at 524. *See also State v. Kloucek,* 17 Or App 74, 520 P2d 458 (1974).

However, in *State v. Annen,* 12 Or App 203, 207, 504 P2d 1400 (1973), the Court of Appeals stated:

"These sections explicitly state that arrested drivers can 'refuse to submit,' ORS 483.634(2) and 483.634(3), to chemical breath tests, and arrested drivers must 'expressly consent,' ORS 483.636, to other chemical tests."

In that case the defendant had expressly refused to submit to a blood test. The court held:

"* * * The blood sample should not have been taken without defendant's consent. Its use at trial was error." 12 Or App at 209.

■ We disagree with the interpretation of the Court of Appeals in the instant case and in *Greenough* and *Kloucek*. The Implied Consent Law did not adopt the same basic rules with regard to breath tests as it did with blood, urine and saliva tests. And "expressly consents" in ORS 483.636 does not mean "unless expressly refuses."

ORS 483.636, governing tests of blood, urine and saliva, must be read in conjunction with ORS 483.634, which governs tests of the breath. The breath test statute states that a test shall be given unless the driver refuses. ORS 483.634(2). The blood, urine and saliva test statute states that a test may be given if the driver "expressly consents." ORS 483.636. Likewise, ORS 483.634 provides that "[a]ny person who operates a motor vehicle * * * shall be deemed to have given consent * * * to a chemical test of his breath * * *." There is no similar language in ORS 483.636.[9] Sutherland on Statutory Construction, with

---

[9] In State v. Greenough, 7 Or App 520, 491 P2d 630 (1971), the Court of Appeals relied on New York and California interpretations of their Implied Consent Laws. *But compare* ORS 483.634 (which deals only with breath tests):

"Any person who operates a motor vehicle upon the highways of this state shall be deemed to have given consent * * * to a chemical test of his breath * * *."

with N Y Veh and Traff Law § 1194 (1973 Supp):

"Any person who operates a motor vehicle or motorcycle in this state shall be deemed to have given his consent to a chemical test of his breath, *blood*, urine or saliva * * *." (Emphasis added.)

Cal Veh Code § 13353 (1971) contains a provision which is almost identical to New York's.

regard to construing statutes on related subject matter, states:

"* * * if words used in a prior statute to express a certain meaning are omitted, it will be presumed that a change of meaning was intended. Thus it has been said that 'where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed." (Footnotes omitted.) 2A Sutherland, Statutory Construction (4th ed) 291, § 51.02, quoting *Western States Newspapers, Inc. v. Gehringer,* 203 Cal App 2d 793, 22 Cal Rptr 144 (1962).

■ When viewed in conjunction with the other statutes in the Oregon Implied Consent Law, it is clear that ORS 483.636 allows a test of blood, urine or saliva only when the driver "expressly consents" to that test. In the instant case it is equally clear that the defendant did not expressly consent to the test.

In *State v. Annen,* supra, the Court of Appeals held that it was error to receive evidence in a criminally negligent homicide case of the results of a blood test taken in violation of the consent provisions of ORS 483.636:

"The Implied Consent Law permits an arrested driver to refuse to submit to chemical sobriety tests. This statutory right was available to defendant in this case [criminally negligent homicide]. The blood sample should not have been taken without defendant's consent. Its use at trial was error." 12 Or App at 209.

■ We agree with the reasoning of the Court of Appeals in *Annen.* Under the law *at the time of trial in the instant case,* a violation of the Implied Consent Law required the suppression of the results of the

chemical test.⑩ *See also State v. Fogle,* 254 Or 268, 459 P2d 873 (1969).⑪

Reversed and remanded.

McALLISTER, J., concurs in the result.

---

⑩ In 1973 the legislature passed a statute which requires the suppression of chemical test results for alcohol taken in violation of the Implied Consent Law only in prosecution for driving under the influence of intoxicating liquor, ORS 483.-992(2).

ORS 483.648 provides:

"Implied consent law not to limit introduction of evidence in certain proceedings. The provisions of the implied consent law, ORS 483.634 to 483.646, except subsection (3) of ORS 483.634 and ORS 483.642, shall not be construed by any court to limit the introduction of otherwise competent, relevant evidence in any civil action, suit or proceedings or to any criminal action other than a violation of subsection (2) of ORS 483.992 or a similar municipal ordinance in proceeding under ORS 482.540 to 482.560."

In cases other than driving under the influence of intoxicating liquor constitutional search and seizure standards will govern the admissibility of the results of chemical tests for alcohol. *See* Schmerber v. California, 384 US 757, 86 S Ct 1826, 16 L Ed 2d 908 (1966); State v. Osburn, 13 Or App 92, 95, 508 P2d 837 (1973).

⑪ In State v. Annen, 12 Or App 203, 207, 504 P2d 1400 (1973), as in the instant case, the violation of the Implied Consent Law involved the consent provisions of the law.

However, in State v. Fogle, 254 Or 268, 459 P2d 873 (1969), this court dealt with the situation where the state failed to introduce any evidence that the equipment used to conduct the breath test had been tested for accuracy by the State Board of Health as required by ORS 483.664(2)(c). Thus our decision in *Fogle* was aimed at the very trustworthiness and competency of the test results. The ruling in *Fogle* would not be affected by the passage of ORS 483.648: "The provisions of the implied consent law shall not be construed by any court to limit the introduction of otherwise *competent,* relevant evidence. * * *" (Emphasis added.)