Argued and submitted January 23, reversed and remanded April 12, 1995

# STATE OF OREGON,
*Appellant,*

*v.*

# MICHAEL HARLEY DORAN,
*Respondent.*

## (94CR129; CA A84559)

893 P2d 569

Katherine H. Waldo, Assistant Attorney General, argued the cause for appellant. With her on the brief were Theodore

R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

No appearance for respondent.

Before Deits, Presiding Judge, and Haselton and Armstrong, Judges.

HASELTON, J.

## HASELTON, J.

The state appeals from the trial court's order suppressing the result of a DUII urinalysis on the ground that defendant did not "expressly consent," ORS 813.140(1), to the test. We reverse and remand.

On February 18, 1994, Officer Samuels of the Oregon State Police stopped defendant on suspicion of driving under the influence of intoxicants. ORS 813.010. After Samuels administered field sobriety tests, he arrested defendant and took him to the Port Orford substation to take a breath test. Samuels read defendant his implied consent rights and consequences, ORS 813.130, and defendant blew into the Intoxilyzer, which indicated that he had a blood alcohol content of 0.00.

Before taking the breath test, defendant had told Samuels that he had taken prescription medication and consumed alcohol earlier in the evening. After administering the test, and believing that defendant might still be under the influence of intoxicants, Samuels told defendant, "I'd like to get a urine sample from you." At that point, defendant said nothing, stood up, accompanied Samuels to the bathroom, took a sample container from Samuels, and provided a urine sample while Samuels observed.

Defendant moved to suppress the urine test results on the ground that he did not "expressly consent" to the test, as required by ORS 813.140(1). That statute provides, in part:

"A police officer may obtain a chemical test of the blood to determine the amount of alcohol in any person's blood or a test of the person's blood or urine, or both, to determine the presence of a controlled substance in the person as provided in the following:

"(1) If, when requested by a police officer, the person expressly consents to such a test."[1]

---

[1] ORS 813.140(2) provides:

"(2) Notwithstanding subsection (1) of this section, from a person without the person's consent if:

"(a) The police officer has probable cause to believe that the person was driving while under the influence of intoxicants and that evidence of the offense will be found in the person's blood or urine; and

Although the trial court found that defendant's "action of giving a urine sample was a voluntary act," it granted defendant's motion:

"The problem I perceive is the statute, [ORS] 813.140, which requires the defendant to expressly consent to the giving of a sample.

"* * * * *

"In my reading of *State v. Stover*[, 271 Or 132, 531 P2d 258 (1975),] even though it's a '75 case, we're dealing with the exact same words. The Supreme Court says when we use the word[s] expressly consents, it requires more than acquiescence by silence.

"* * * * *

"So, I think that under *State v. Stover*, Officer Samuels literally had to get a verbalization from [defendant]. 'I want you to give me a urine sample, will you do so?' Voluntarily walking in and peeing in a cup doesn't appear to be sufficient for the Supreme Court. You need to say 'yes.' "

■   The state asserts that the trial court erred in its reading of *Stover* and in concluding that, because defendant did not verbally consent to the test, he did not expressly consent under ORS 813.140(1). We agree with the state.

We begin with *Stover*, the predicate of the trial court's holding. There, the defendant, who had driven a car involved in a fatal collision, appealed his conviction for negligent homicide. The defendant asserted that the trial court erred in failing to suppress the results of a blood alcohol test because he had not expressly consented to giving the blood sample. The defendant relied, particularly, on testimony by the technician who drew his blood that when the technician told the defendant that he was going to take a blood sample, the defendant responded, "Give me a break." *State v. Stover*, 14 Or App 559, 563, 513 P2d 537 (1973), *rev'd* 271 Or 132, 531 P2d 258 (1975). The technician further testified that, although the defendant's comment indicated that he did not want his blood drawn, the technician nevertheless drew the sample. *Id.*

"(b) The person is unconscious or otherwise in a condition rendering the person incapable of expressly consenting to the test or tests requested."

This court affirmed. In so holding, the court relied on *State v. Greenough*, 7 Or App 520, 491 P2d 630 (1971), *rev den* (1972), for the proposition that the implied consent law governed tests of blood and urine, as well as of breath. Consequently, absent an explicit refusal by the defendant, he would be deemed to have consented to the blood draw: "The 'expressly consents' phrase * * * means, in effect, 'unless expressly refuses.' " *Stover*, 14 Or App at 564. Because the defendant had not made such an explicit refusal, he had "expressly consented." *Id.*

The Supreme Court reversed, holding that the defendant did not consent to the blood test:

> "The evidence at the hearing on the motion to suppress clearly indicates that the defendant did not consent to the taking of a blood sample. In fact, the laboratory attendant testified that the defendant did not want the sample taken." 271 Or at 143.

The court also rejected this court's conclusion, based on *Greenough*, that the implied consent law encompassed blood and urine tests:

> "The Implied Consent Law did not adopt the same basic rules with regard to breath tests as it did with blood, urine and saliva tests. And 'expressly consents' in ORS 483.636 does not mean 'unless expressly refuses.' " *Id.* at 145.

Thus, contrary to the trial court's assumption in this case, *Stover* does not resolve whether a suspect "expressly consents" to giving a urine sample when he or she voluntarily, but silently, provides such a sample. Instead, the Supreme Court held that a suspect who manifested reluctance to give a sample, but who did not explicitly refuse, could not be deemed to have "expressly consented." We proceed, then, to address the unresolved issue by reference to the familiar principles of statutory construction set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993).

■ The text of ORS 813.140(1) is ambiguous. "Expressly," as the state observes, is susceptible to at least two plausible meanings — as a synonym of "verbally," or as an

antonym of "impliedly."[2] The context of ORS 813.140(1), including the historical evolution of that statute and its antecedents, suggests that the legislature intended the latter meaning. In particular, that evolution indicates that the legislature employed "expressly" to require *actual* consent for the giving of blood and urine samples, as opposed to the consent implied in law for breath tests under Oregon's implied consent statutes. ORS 813.100 *et seq.*

In 1941, the legislature enacted the first statute pertaining to chemical tests for intoxication. That statute authorized officers to administer tests of breath, blood, or urine absent an objection:

> "If any person shall be arrested while operating a motor vehicle * * * and shall be charged with then being intoxicated or under the influence of intoxicating liquor or narcotic drugs, the officer, or person, making the arrest may cause a chemical analysis to be made of the blood, breath, urine or other bodily substance of the arrested person, *unless the arrested person objects thereto*, in order to determine the amount of alcohol then in such person's blood." OCLA § 115-318a (1943) (emphasis supplied).

In 1955, the legislature changed the statute to require officers to obtain written consent from DUII suspects before administering chemical tests:

> "If any person is arrested while operating a motor vehicle and is charged with then being under the influence of intoxicating liquor, the officer or person making the arrest may, *upon written consent of the arrested person*, cause a chemical analysis to be made of the blood, breath, urine or other bodily substance of the arrested person, in order to determine the amount of alcohol then in such person's blood." *Former* ORS 483.630(1) (*repealed by* Or Laws 1965, ch 574, § 13) (emphasis supplied).

In 1961, the legislature deleted the requirement that DUII suspects give "written" consent to chemical testing.

---

[2] *Webster's Third New International Dictionary* 803 (unabridged 1971) provides the following definitions for "express:"

"1a: directly and distinctly stated or expressed rather than implied or left to inference.

"* * * * *

"1b(1): to represent in words."

The amended statute merely required "consent." Or Laws 1961, ch 713, § 1.

■ Finally, in 1965, the legislature enacted the implied consent law, which mandates that every driver is deemed to have consented to breath testing:

> "(1)  Any person who operates a motor vehicle upon the highways of this state shall be deemed to have given consent * * * to a chemical test of his breath for the purpose of determining the alcoholic content of his blood if arrested for driving a motor vehicle while under the influence of intoxicating liquor * * *.
>
> "(2)  If a person under arrest for driving a motor vehicle while under the influence of intoxicating liquor * * * refuses the request of a police officer to submit to a chemical test of his breath * * * and if the person has been informed of the consequences of such refusal * * * and of his rights * * * no test shall be given, but the police officer shall prepare a sworn report of the refusal and cause it to be delivered to the department." *Former* ORS 483.634 (renumbered ORS 487.805 in 1975).[3]

Under the implied consent law, police officers are not obliged to obtain actual consent before giving the breath test. They are authorized to administer the breath test unless the DUII suspect refuses to participate. Thus, the implied consent legislation of 1965 effected, in many ways, a revival of the original 1941 statute, *but for breath tests only.*

Conversely, at the same time it enacted the implied consent law, the legislature made it clear that that law did not apply to blood or urine testing:

---

[3] In 1983, the legislature repealed ORS 487.805, Or Laws 1983, ch 338, § 978, but enacted a new implied consent law codified at ORS 813.100. Or Laws 1983, ch 338, § 591. That statute currently provides, in part:

> "(1)  Any person who operates a motor vehicle upon premises open to the public or the highways of this state shall be deemed to have given consent, subject to the implied consent law, to a chemical test of the person's breath, or of the person's blood if the person is receiving medical care in a health care facility immediately after a motor vehicle accident, for the purpose of determining the alcoholic content of the person's blood if the person is arrested for driving a motor vehicle while under the influence of intoxicants in *violation of* ORS 813.010 or of a municipal ordinance. * * *
>
> "(2)  No chemical test of the person's breath or blood shall be given, under subsection (1) of this section, to a person under arrest for driving a motor vehicle while under the influence of intoxicants * * *, if the person refuses the request of a police officer to submit to the chemical test after the person has been informed of consequences and rights as *described under* ORS 813.130."

"Nothing in ORS 483.634 is intended to, in lieu of a request for and administration of a breath test, preclude the administration of a chemical test of the blood, urine or saliva of any person if, when requested by a police officer, the person expressly consents to such a test." *Former* ORS 483.636 (*renumbered* ORS 487.835 in 1975).[4]

Thus, contemporaneously with, and in the context of, the enactment of the implied consent law, the legislature inserted "expressly" to describe the consent needed for chemical testing of blood and urine. That context indicates that the legislature intended "expressly" to be the antonym of "impliedly"—that is, to signify actual, rather than implied in law, consent.

The limited legislative history of the 1965 legislation confirms that construction. In proposing that legislation, Warne L. Nunn, then chairman of the Oregon Traffic Safety Commission, testified:

"[T]he implied consent feature would be in effect *only on breath tests. Blood tests would continue to be given only with the individual's consent*, or if he is dead, unconscious, or otherwise unable to take a breath test. Refusal to take a *blood* test would not bring license suspension." (Emphasis supplied.)

That statement suggests that the insertion of "expressly" was intended to continue, rather than substantially alter, the pre-existing actual consent requirement. We note, moreover, that there is no expression in the legislative history of any desire to reimpose the sort of explicit verbal consent requirement that the legislature had deleted by removing the "written consent" requirement only four years earlier.

■ We thus conclude that ORS 813.140(1) does not require verbal assent to the giving of a urine sample. Rather, actual consent, even if silent, is sufficient.

Applying that standard, we conclude that defendant's compliance with Samuels' request to provide a urine sample satisfied ORS 813.140(1). Defendant did not contend that he was coerced into giving the sample. Rather, the trial

---

[4] In 1983, the legislature repealed ORS 487.835, Or Laws 1983, ch 338, § 978, and enacted ORS 813.140, Or Laws 1983, ch 338, § 593, the text of which appears earlier in this opinion.

court found, and defendant never disputed, that he voluntarily provided the sample. Accordingly, the trial court erred in suppressing the results of the urine test.

Reversed and remanded.